HEILMAN *against* MARTIN.

ERROR to *Pulaski Circuit Court.*

All pleas to the jurisdiction of a Superior Court, must show, not only such facts as take the case out of the jurisdiction; but also that there is some other court in which effectual justice may be administered; for if there is no other place or mode of trial, that alone will give the Superior Court jurisdiction.

Where a defendant withdraws his general demurrer to the declaration, he must be considered as undertaking to plead issuably to the merits.

A general demurrer is regarded as a plea in bar, and a defendant, after interposing it, is precluded from pleading, either to the jurisdiction, to the disability of plaintiff or defendant, to the count or declaration, or to the writ, in abatement: and if he does so plead, the plaintiff may properly move to strike out his plea, or may disregard it altogether.

The Court of Probate, in each county of this State, under the Constitution, and the act of 1836, consists of a single judge, and has a general jurisdiction over the appointment of guardians, which is not by any law given concurrently to the County Court: and the latter court possesses no power to appoint a guardian.

Where the caption of the record of such an order of appointment shows that two Justices of the Peace sat as members of the court making the appointment, together with the Probate Judge, they must be considered as having participated in the appointment, although the record is signed by the presiding Judge alone; and such order will be taken to have been made, not by the Probate, but by the County Court.

The records of a court composed of several members, or having by law one presiding officer, are not usually signed by every member of the court: and when any member of a court is once shown by the record to have taken his place upon the judicial seat, upon any particular day of a term, his presence and participation in all the business transacted in court during that day, must be presumed until the contrary is proven.

Even where the relation of guardian and ward existed at common law, the ward might maintain an action of account against his guardian after he came of age; and might, while under age, call him to account by bill in chancery.

The personal disability of a ward to sue his guardian was matter in abatement only; and therefore, under the general issue, in an action of assumpsit for work and labor done, by ward against guardian, evidence proving the relation of guardian and ward to exist, is not admissible.

A bond given in his capacity of guardian, by a person appointed as such by a court having no power to make the appointment, is void.

Even if such a bond were valid, it is doubtful whether the ward could sustain an action upon it, to recover the value of work and labor by him done for the guardian. Such a bond imposes no obligation on the guardian to pay the ward for services and labor; which is a matter in no wise connected with his trust, or the due and proper performance of his duties as guardian.

And even if the ward would be compelled to resort to his action on such bond, yet, where the bond is merely transcribed by the Clerk, as a part of the record, without being legally made a part of the record, the existence of such a bond does not appear, so that it could bar an action of assumpsit.

The Constitution, giving to the Circuit Courts original jurisdiction in all matters of contract where the sum in controversy is over one hundred dollars; in an action of assumpsit, the *verdict* does not furnish the true rule by which the sum in controversy is to be ascertained.

It may determine the controversy, or ascertain the respective rights of the parties in the subject matter of the controversy; but cannot indicate or decide what was originally in controversy between them; unless that mattter be directly put in issue by

Heilman *against* Martin.

a plea to the jurisdiction, setting forth such facts as exclude the court from exercising jurisdiction.

This is only necessary in cases where the plaintiff sets forth such facts as present a case within the jurisdiction of the court, although the true and real matter of controversy is not within its jurisdiction.

And in such case, if no sufficient plea to the jurisdiction is interposed, the Circuit Court has a legal right to adjudicate the matter, and pronounce final judgment, although the verdict may be for a less sum than one hundred dollars, or in favor of the defendant.

The true rule on this subject is, that in all actions, except covenant, where the law limits and specially prescribes the precise sum which may be recovered, upon the cause of action, set out in the plaintiff's declaration, and such cause of action, as therein stated, presents a liability or demand exceeding one hundred dollars, exclusive of interest, which, if admitted or proven, the plaintiff is legally entitled to recover, the Circuit Court has jurisdiction, and may pronounce final judgment, if no sufficient plea to the jurisdiction be interposed.

But if such plea be put in, and it appears on the trial thereof, that so much of the plaintiff's demand, as reduces it to a sum not over one hundred dollars, is altogether unfounded or fictitious, or has been paid, or otherwise legally discharged or satisfied, so that the real sum in controversy does not exceed one hundred dollars, the suit must abate for want of jurisdiction.

This rule applies to all actions upon liquidated demands, actions of indebitatus assumpsit, and all other actions, where the law limits and specially prescribes the sum which may be legally claimed and recovered upon the contract as set out or presented by the plaintiff, and no discretion is left with the court or jury as to the amount to be recovered, if the contract be admitted or proved as stated.

But where the law does not limit and specially define what sum shall be recovered upon the contract as stated, but leaves it in the discretion of the court or jury to determine what amount the plaintiff ought to have for the non-performance of the contract as set out, or presented by the plaintiff, as in assumpsit for breach of contract to marry, and the like, in which the damages, or sum which may be recovered, are unliquidated and uncertain, the damages claimed in the declaration constitute the sum in controversy, and determine the jurisdiction.

This was a suit commenced by the defendant in error as a minor under twenty-one years of age, by William Ward, as his next friend and guardian, against the plaintiff in error, in the Circuit Court of Pulaski county, in assumpsit. The declaration contains but one count, which is in the usual form of the common count for work and labor done and performed, and money lent and advanced. The sum alleged to be due and owing for the former is $150—that on account of the latter $101—and damages are claimed to the amount of $200. At the term to which the writ was returnable, Heilman filed a general demurrer, to the declaration but afterwards, before any further proceeding was had in the case, withdrew it, by leave of the court, and filed his plea of non-assumpsit, together with a plea to the jurisdiction of the court; the defendant in error joined issue to the former, and, on his motion, the court struck out the latter, whereupon the case was continued.

At a subsequent term the case was tried by a jury, and a verdict

returned, and judgment thereupon pronounced in favor of the defend-
ant in error for the sum of $94 64 cts., his damages assessed by the
jury, together with the costs of suit.

During the trial Heilman, to prove himself the guardian of said
Martin, offered to read as evidence, an order from the record book of
what purported to be the record of the County Court of the county of
Pulaski, but signed by David Fulton, who at the time was Judge of
the County and Probate Courts, as appears by reference to the re-
cord, the caption of which, as stated in the bill of exceptions taken on
the trial, is as follows: " Friday morning, July 14, 1837. Court met
pursuant to adjournment. Present the Hon. David Fulton, Judge, and
Allen McLain and Richard C. Hawkins, Esqrs., Associate Justices."
After which follows the order in question, which recites the appear-
ance in court of Ambrose Hudgens, Sen., and John Martin, and Al-
bert Martin, his indented apprentices, and states that they, the said
John Martin and Albert Martin, had left the employment and guar-
dianship of said Hudgens, without cause or his consent, and that said
Martins respectively being present in court, requested the court to
appoint Heilman their guardian, and that the court did, on considera-
tion, vacate their indentures of apprenticeship to Hudgens, and ap-
pointed Heilman their guardian, on his entering into bond with suf-
ficient security for the faithful performance of his duty, in the sum of
four hundred dollars; but the defendant in error objected to his read-
ing said order to the jury as evidence, and the court sustained his ob-
jection, and would not suffer it to be read to the jury as evidence,
whereupon Heilman excepted, and in his bill of exceptions set forth
all of the evidence adduced on the part of the defendant in error, and
so much of said record as he offered to read as evidence, which was
signed and sealed by the court, and made part of the record of this
case. Whereupon he brought his case up by writ of error, and by his
assignment of errors questioned the correctness of the decision and
judgment of the Circuit Court. 1st. In striking out his plea to the
jurisdiction of the Court. 2nd. In refusing to suffer him to read to
the jury as evidence the record of his appointment as guardian of the
defendant in error. 3d. In giving judgment for the defendant in er-
ror, because his action is misconceived, his remedy (if he has any

remedy at law,) being by an action on the bond executed by the plaintiff as his guardian, and not by an action of assumpsit. 4th. The obligation of Heilman for the services and labor of his ward is equitable, not legal, and an action at law therefor is not the appropriate remedy. 5th. In giving judgment in favor of the defendant in error for his damages assessed by the jury, with costs of suit, notwithstanding the damages so assessed do not amount to one hundred dollars. 6th. That judgment was rendered for the defendant, whereas, by law, it should have been for the plaintiff in error.

TRAPNALL & COCKE, for plaintiff in error:

FOWLER, *Contra:*

The court did not err in striking out the attempted plea to the jurisdiction. Such plea could not be filed after a plea in bar to the merits, such as that of *non-assumpsit*, which was the *first* plea offered by Heilman. After filing the *general issue*, Heilman was barred from pleading in abatement or to the jurisdiction. Said plea to the jurisdiction was fatally defective, even had it been offered in time, *on its face*, or for the want of an affidavit averring its truth. It was therefore properly stricken out. *Pope, Steele, and McCampbell's Dig.*, 321; *Hard. Rep.*, 65, *Meggs vs. Shaffer.* The court properly refused to admit the record of the County Court, in evidence—the County Court having no power under the Constitution and laws of the State to appoint guardians. This power belongs exclusively to the Court of Probate, which is a separate and distinct tribunal from the County Court. See *Const. Art.* 6, *sec.* 10; *Act of Assembly of* 1836, entitled " *An Act to establish County Courts*," 178, *et seq.* And the fact that such order was made by the County Court, is conclusive, not from the caption of the record, but from the body of it, showing that it was made by David Fulton, Judge, and Allen McLain and Richard C. Hawkins, Esqrs., Associate Justices of the County Court. These Justices could not sit in, or participate in the acts of, the Probate Court. If the Bond be taken as a part of the evidence excluded, and properly embodied in the transcript, the case is not bettered for Heilman. Upon its face it shows that it was executed by virtue of an order of the County Court, a tribunal which had no power to

21

make such order; consequently no action could be sustained thereon by Martin, or any body else. It is void. A bond, required by statute, must be taken in strict pursuance of the statute, or no action can be sustained upon it. See *Ark. Rep.*, 144, *Ashley vs. Lindsay's, Ex'rs.* Recognizance and bond, under a statute, are construed alike in all their bearings, and must strictly follow the statute in substance. Assuming the foregoing positions to be correct, and that the appointment of Heilman, and his bond, are nullities, it follows, as a necessary result, that the position assumed by Heilman's attorney, in his fourth assignment of error, giving Martin relief in equity only, is both untenable and absurd.

The Circuit Court properly rendered judgment for the damages—seventy-five dollars—assessed by the jury. It was legally bound to do so. In actions sounding in damages, it is the amount claimed in the declaration and writ that gives jurisdiction to the court, and the finding of the jury for a less sum cannot take away the jurisdiction once acquired. See 1 *Bibb Rep.*, 342, *Singleton vs. Madison; ib.*, 402, *Hume vs. Ben;* 1 *Wils. Rep.*, 19, *Pitts vs. Carpenter;* 7 *Monroe Rep.*, 221, *Grant vs. Tams & Co.* The question as to the jurisdiction, in this case, does not come within the decision made in the case of *Berry* and *Linton*, at a former term of this court. That was an action of debt, on several notes, each of which, taken separately, was within the exclusive jurisdiction of a Justice of the Peace. This is an action *sounding in damages merely*, in which more than *one hundred dollars* is claimed both in the declaration and writ, and more than one hundred dollars is proved to be due, as shown by one of the defendants, (Heilman's), bills of exception, and a party's bill of exceptions must always be construed strictly against himself.

RINGO, *Chief Justice*, delivered the opinion of the Court:

The questions arising in this case may be disposed of in the order in which they are stated. The decision upon the plea to the jurisdiction of the court, although drawn in question by the assignment of errors, was not controverted in the argument, and although not formally withdrawn or abandoned, does not appear to be relied on by the plaintiff, and the principles upon which it should have been struck

Heilman *against* Martin.

out, are so well established, and so obviously applicable to this case, that argument in support of the decision is deemed unnecessary, however, it may not be improper to state them briefly. The plea is in these words, " and for further plea in this behalf the defendant saith that the amount of money assumed by the *plaintiff* to be paid to the plaintiff is less than one hundred dollars, and this he is ready to verify, wherefore," &c. It appears to be well settled by the adjudication in all the courts of England, and most, if not all, of the courts in the several States of this Union, that all pleas to the jurisdiction of the Superior Courts must show, not only such facts as take the case out of the jurisdiction, but, also, that there is some other court in which effectual justice may be administered, for, if there is no other place or mode of trial, that alone will give the Superior Courts jurisdiction. 1 *Chit. Plead.* 479; *Lawrence vs. Smith and Russell,* 5 *Mass. Rep.,* 362; *Rea vs. Hayden,* 3 *Mass. Rep.,* 24; and the application of these principles to the present case is not opposed by any thing contained in the Constitution or laws of the State, because in the distribution of the judicial powers the Constitution confers on the Circuit Courts original jurisdiction of all civil cases which shall not be cognizable before Justices of the Peace, until otherwise directed by the General Assembly; and the facts of this case, as disclosed by the declaration, not only show a case within the jurisdiction of the Circuit Court, but if true, disclose a case over which no other legal tribunal in the State can exercise jurisdiction. It, therefore, devolved upon the party controverting the jurisdiction by plea, to set forth in his plea, in addition to such facts as would divest the court of its apparent right of jurisdiction, such other facts as should clearly indicate what tribunal in particular had the rightful cognizance of the case. These essential allegations are entirely omitted in the plea under consideration, and Heilman having first interposed his general demurrer to the declaration must, upon the withdrawal of his demurrer by leave of the court, be considered as undertaking to plead issuably, to the merits; beside which, there is no proposition better settled by adjudication, and supported by reason and justice, than that a party by inverting the established order of pleading is " precluded from pleading any matter prior in point of order." 1 *Chit. Plead.,* 426; *Co.*

*Lit.* 303; *Com. Dig. Abatement, C.;* and a general demurrer being regarded by the law, as a plea in bar to the action itself, Heilman, after he had interposed his demurrer, was precluded from pleading either to the jurisdiction of the court, to the disability of the plaintiff or defendant, to the count or declaration, or to the writ; because, by pleading to the action itself in bar thereof, (which, in this cause, he had twice done when the plea under review was filed,) the law regards him as having admitted on the record, that there was no foundation for either of the defences before mentioned, and, therefore, as well as for the defect apparant on the face of the plea, Martin would have been justified in disregarding it altogether, but the course pursued by him was more appropriate, and is fully authorized by the practice in England and in this country; and whatever may be the legitimate and authorized construction of our statute which provides that the plaintiff in replevin, and the defendant in all other actions may plead as many several matters, whether of law or of fact as he may think necessary for his defence; we do not, under the circumstances, consider it as having any application to the present case.

The second question presented by the record and assignment of errors, whether viewed simply as a question of jurisdiction between the County and Probate Courts, or, as one depending upon the relative rights of the parties, if they are to be regarded as legally standing in the relation of guardian and ward, is more interesting and important in its consequences to the community generally. Heilman, on the one hand, insists that he was the guardian of *Martin*, appointed and qualified according to law, when the services and labor for which he is sued in this action, were done and performed: and that an action of assumpsit cannot, if indeed any action at law therefor can, be maintained against him, which he controverts and denies, while on the contrary the defendant in error contends that the appointment of Heilman, as his guardian, was made by the County Court, instead of the Probate Court, which had the legal authority to make it, and that the County Court had no jurisdiction or power whatever over the subject, and therefore the appointment in question being *coram non judice*, is void, and the record thereof was properly excluded from the jury.

Heilman *against* Martin.

In the investigation of this question we have considered. 1st. Upon what court the general jurisdiction to appoint guardians for minor orphans is conferred. 2nd. By what court the appointment or order in question was made. 3rd. Is it competent legal evidence for Heilman in the present controversy. The Constitution of this State, art. VI. sec. 9., ordains that " there shall be established in each county in this State, a court to be holden by the Justices of the Peace, and called the County Court, which shall have jurisdiction in all matters relating to county taxes, disbursements of money for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the respective counties."

SEC. 10. There shall be elected by the Justices of the Peace of the respective counties, a presiding Judge of the County Court, to be commissioned by the Governor, and hold his office for the term of two years, and until his successor is elected and qualified. He shall, in addition to the duties that may be required of him by law as a presiding Judge of the County Court, be a Judge of the Probate Court, and have such jurisdiction in matters relative to the estate of deceased persons, executors, admistrators, and guardians, as may be prescribed by law, until otherwise directed by the General Assembly."

The General Assembly, by a Statute approved, Nov. 7, 1836, declare that the presiding Judge of the County Court, "in addition to the duties required of him, as presiding Judge of the County Court shall be Judge of the Court of Probate, and the said Court of Probate, so constituted, shall have the following jurisdiction, to wit: the taking probate of wills, the granting letters testamentary, and administration, the appointment of guardians, and the settlement of executors', administrators', and guardians', accounts; and have the right of adjudicating all claims presented for allowance against executors, administrators and guardians." *Acts* 1836, *p.* 179.

The above quotations shew conclusively that the Court of Probate, organized under the Constitution, in conformity with the provisions of the Act of 1836, in force at the date of the order in question, consisted of a single Judge, and had a general jurisdiction over the appointment of guardians, which was not by any law concurrently given to the County Court, and it did not therefore possess any jurisdiction over

Heilman *against* Martin.

the subject, or power to make the appointment under consideration. The caption of the record of said order, as set forth in the bill of exceptions, proves that two Justices of the Peace sat as members of the court, with the presiding Judge of the County Court, when the order appointing the plaintiff guardian of the defendant in error was made, and who, for aught that appears, may have directed the order, and must in our opinion be regarded as having at least participated in the appointment, although the record appears to have been signed by the presiding Judge alone, and this latter circumstance is relied upon by the plaintiff in error, as establishing the fact that his appointment was made by the Probate Court, instead of the County Court, as stated in the caption of the record; but it does not, in our opinion, warrant this conclusion; because it is generally known to be the uniform practice of all courts of record, to state in the caption or commencement of the record of their proceedings, the style of the court, and the name or names of the person or persons sitting in, or holding the court, with his or their official character or style, substantially, if not literally, in the manner and form observed in the record before us; and it is a fact, equally notorious, that the records are not uniformly, or generally, signed by every member of the court, when it is composed of several persons, or has, by law, one presiding officer, in which case it is not unusual for him alone to sign the record of their proceedings; and when any member of a court is once shown by the record to have taken his place on the judicial seat, upon any particular day, of any term of the court, his presence and participation in all of the business transacted in court during that day must be presumed, until the contrary is proved, which does not appear to have been even attempted in this case; we, are therefore bound to presume that Allen McLain and Richard C. Hawkins, Esqrs., were present, with David Fulton, the presiding Judge of the County Court, acting officially with him when the appointment of Heilman as guardian of the defendant in error was made. Another consideration intimately connected with this view of the question, which is in our opinion entitled to some influence in determining the question now under consideration, is that by law as we have already shown, the Court of Probate must have been held by a single Judge; but three persons

are proven to have occupied the judicial seat when the order and appointment under consideration were made; and, therefore, they could not have been made by the Court of Probate, and must be regarded as having been made by the County Court, a tribunal possessed no jurisdiction over the subject.

If the view which we have taken of the propositions just disposed of be correct, as we are satisfied it is, there can be no doubt that the Circuit Court, from the circumstances, as shown by the record before us, properly refused to suffer the order to be read to the Jury as evidence for the plaintiff in error, upon the issue joined, because it was made by a court not possessed of jurisdiction over the subject matter, and was therefore void, and the parties never did, by virtue thereof, stand in the relation to each other, of guardian and ward; but the result would not, in our opinion, be different, if that relation had legally subsisted between them when the services were rendered, and the labor performed; for that relationship does not, according to the common law, or any law in force here, in itself, oblige the ward to labor or perform menial, or other valuable services for the benefit of his guardian, or authorize the latter to receive, for his own use, the value of his earnings, whether they accrue under an employment in the service of his guardian, or some other person. Chancellor Kent, treating of the office of guardian, says emphatically, " the guardian's trust is one of obligation and duty, and not of speculation and profit." 2 *Kent's Com.* 187. And the truth of his remark no one will question, who has examined the subject, and maturely considered the nature and object of the appointment; and notwithstanding the ward could not, at common law, maintain an action at law against his guardian until he come of age, he was at common law liable to an action of account after the infant came of age, and the infant, while under age, might by his next friend, call the guardian to account by bill in chancery, but the personal disability of the ward to sue his guardian must, as we apprehend, have been taken advantage of by pleading it in abatement of his suit, and it never could have been available as a defence upon the general issue, because it is simply a matter in abatement, and could not constitute a legal bar to the right of action, after the infant came of age; which would be

the effect of admitting it in evidence on the general issue, and it is therefore both irrelevant and incompetent testimony for the plaintiff in error upon this issue; consequently the court did not err in rejecting the evidence offered by the plaintiff in error.

The third and fourth questions presented by the record and assignment of errors, are based upon the assumption that the action is misconceived; and may with propriety be considered together. The former assumes that the defendant in error has a higher security in the bond executed by the plaintiff as his guardian, and the latter asserts that his demand is merely equitable, and no action at law can be maintained upon it. We have already decided that Heilman's appointment as guardian of Martin is void, and that the relation of guardian and ward, never legally subsisted between them by virtue thereof, and, therefore, upon the principle decided and acted upon by this court in the case of *Ashley vs. Brazil and Lindsay's Ex'rs.*, 1 *Ark. Rep.*, 144; the bond is void, and no action whatever could be maintained upon it; in addition to which, we consider it doubtful at least, whether the defendant in error could, by an action on the bond, if it was valid, recover upon the express or implied promise of the plaintiff to pay him for his services and labor; the right of action not falling within the scope of any stipulation either expressed or implied in the condition of the bond; which simply binds the plaintiff to a due and proper performance of his duties as guardian, but does not impose upon him any obligation to pay for the service and labor of his ward, which is a matter in no wise connected with his trust, or the due and proper performance of his duties as guardian. But, suppose we are mistaken in this view of the subject, still the plaintiff in error cannot avail himself of this objection to the present suit, because the bond does not appear to have been offered or admitted as evidence on the trial, nor is the existence of such bond, in any manner, legally shown by the record; such a bond, it is true, has been transcribed by the Clerk, as part of the record returned to this court with the writ of error, yet it is not by any legal means made a part of the record of this case, and the Clerk, in so transcribing it, transcended his authority, and violated his duty, which was to make out and certify according to law, a true and complete transcript

Heilman *against* Martin.

of the record of the case; and nothing more, but this act of the Clerk, could not confer, on either party, the right to any advantage by reason of its existence, or justify the court in regarding it as legally entitled to any consideration in the case. The latter position assumed by the plaintiff in error, that the demand for which he is sued is equitable merely, is founded upon the presumption that he was legally guardian of Martin when the services were rendered, and the labor performed, for which he is sued in this action, has no foundation whatever, since he has wholly failed to prove that fact, or establish the legal existence of that relation; whatever consideration it might have been entitled to receive, if that relation had been established; we cannot, therefore, regard the action as misconceived.

The only question remaining to be decided is, whether the Circuit Court had jurisdiction of the case, and authority to pronounce judgment therein, for the damages assessed by the jury, and costs of suit, the action sounding in contract, and the damages assessed being a less sum than one hundred dollars; this question depends entirely upon what shall be considered as the sum in controversy, contemplated by the Convention when they use that language in defining and prescribing the repective jurisdiction of the Circuit Court and Justices of the Peace in matters of contract in the Constitution. On the part of the plaintiff, it is urged that the sum in controversy is ascertained by the verdict, which, being for a less sum than one hundred dollars, the Circuit Court had no jurisdiction of the case, and could not legally pronounce any judgment therein; which is denied by the defendant, who insists that the damages claimed in his declaration must be regarded as being the sum in controversy   The *Constitution, art.* VI., *sec.* 3, ordains " that the Circuit Court shall have original jurisdiction of all civil cases; which shall not be cognizable before Justices of the Peace, until otherwise directed by the General Assembly; and original jurisdiction in all matters of *contract when the sum in controversy is over one hundred dollars.*" And the 15*th sec.* of the same article, amongst other things, declares that Justices of the Peace " shall have individually, or two or more of them jointly, exclusive original jurisdiction in all matters of contract, except in actions of covenant, when the sum in controversy is one hundred dollars and under." These

Heilman *against* Martin.

fundamental ordinances definitely prescribe the jurisdiction respectively, of the Circuit Court and of Justices of the Peace, in matters of contract. They confer upon the former original jurisdiction of all matters of contract when the sum in controversy is over one hundred dollars, and upon the latter, the exclusive original cognizance in all matters of contract, except in actions of covenant, when the sum in controversy is one hundred dollars and under. The line of separation between their respective jurisdictions, in this respect, is clearly drawn and unalterably fixed, until the Constitution shall be abrogated or amended, and the only difficulty is to determine, upon satisfactory reasons, what shall be regarded as being the sum in controversy, within the spirit and meaning of the Constitution, and by what criterion it is to be ascertained; does the verdict furnish the true rule by which the sum in controversy is to be ascertained in a court of original jurisdiction? In our opinion it does not. It may determine the controversy, or ascertain the respective rights of the parties in the subject matter of the controversy; but, it cannot, in the nature of things, indicate or decide what sum was originally in controversy between them; unless that matter be directly put in issue by a plea to the jurisdiction, setting forth, in legal form, and in a proper manner, such facts as are sufficient in law to exclude the court from exercising jurisdiction of the subject matter of the controversy; which can only be necessary in cases where the facts, as set forth by the plaintiff, present a case within the jurisdiction of the court, although the true and real subject matter of the controversy is not within its jurisdiction; and in this class of cases, if no sufficient plea to the jurisdiction is interposed, we have no doubt that the Circuit Court has a legal right to the adjudication, and is bound by law to exercise jurisdiction over the subject, and pronounce final judgment between the parties, notwithstanding the verdict may be for a less sum than one hundred dollars, or, in favor of the defendant; in which case, if the sum in controversy must be ascertained by the verdict, no judgment conclusive upon the parties, or the subject matter of the adjudication, could ever be pronounced, nor could any valid judgment be given even for the costs of suit, and the plaintiff would be at liberty to review the same controversy in the same, or some other court, and harrass, and vex, and

Heilman *against* Martin.

oppress the defendant according to his own pleasure, unless restrained by a court of equity, contrary to justice, and the whole spirit and genius of our laws and institutions; notwithstanding the controversy had been previously decided against him upon its merits, and no previous adjudication upon the matter, could ever be interposed as a bar to the subsequent proceeding, because, being *coram non judice*, it would be void. No rule, attended with consequences so unjust and absurd, can constitute the true criterion for ascertaining the jurisdiction of the court. But, independently of this, it would be a very inconvenient, uncertain, and unsatisfactory rule, because the parties would, in many cases, be subjected to all the trouble, expense, and anxiety incident to a vexatious and protracted litigation before they could, by possibility, know whether the court had jurisdiction of the controversy or not, and then, after passing through all the forms of law to a final trial of the case, be compelled to resort to a different tribunal, where similar proceedings might, and very probably would, be attended with the same result, and thus, the administration of the law would be rendered so uncertain and perplexing, and be attended with so great delay, as, in many cases, to amount virtually to a denial of justice, the verdict depending, as it always must in the very nature of things depend, upon a great variety of circumstances and facts which are seldom, if ever, alike upon two or more occasions, must be ever subject to vary with the change of circumstances, and facts presented in combination at each trial; and, consequently, one jury might find, and be justified too in finding, a very different verdict from that which another would be warranted in finding upon another trial of the same controversy; and, therefore, we are satisfied that the verdict, when no plea to the jurisdiction is interposed, cannot be regarded as ascertaining the sum in controversy, by which the jurisdiction of the court, in matters of contract, must be determined.

By what rule then is the question of jurisdiction to be determined in matters of contract? In the investigation of this question, we have experienced considerable difficulty in coming to a just and satisfactory conclusion. We are, however, satisfied, upon the most mature consideration of the subject, that in all actions, (except covenant,) where the law limits and especially prescribes the precise sum

which may be recovered, upon the cause of action set forth in the plaintiff's declaration, petition, or statement; and such cause of action, as therein stated, presents a liability or demand exceeding one hundred dollars, exclusive of interest, which if admitted or proven, the plaintiff, is legally entitled to recover. The Circuit Court has jurisdiction, and is justified in pronouncing final judgment upon the controversy, if no sufficient plea to the jurisdiction be interposed by the defendant; but if such plea be put in, and it appears upon the trial thereof, that so much of the plaintiff's demand, as reduces it to a sum not exceeding $100, is altogether unfounded or fictitious, or has been paid, or otherwise legally discharged or satisfied; so that the real sum in controversy does not exceed the sum of $100, the suit must be abated, the Circuit Court having no jurisdiction of the matter. And this rule applies to all actions upon liquidated demands, actions of indebitatus assumpsit, and all other actions and proceedings where the law limits and specially prescribes the sum which may be legally claimed and recovered upon the contract as set out or presented by the plaintiff, and no discretion is left with the court or jury as to the amount to be recovered, if the contract be admitted, or proved as stated; but, in every case, where the law does not limit and specially define what particular sum may be recovered upon the contract, but leaves it in the discretion of the court or jury to determine what amount the plaintiff ought to have for the non-performance of the contract, as set out, or presented by the plaintiff; as, for instance, in the action of assumpsit for the breach of contract to marry, and the like, in which the damages, or sum which may be recovered, are unliquidated and uncertain, and are not specially limited or prescribed by law, the damages claimed in the declaration or proceeding, being the only legal limit to the plaintiff's right, beyond which he cannot legally recover, constitutes the sum in controversy, and, in itself, determines the question of jurisdiction, in this respect, beyond all controversy. By applying the principles, above stated, to the case under consideration, it appears manifestly, that the Circuit Court had jurisdiction of the subject; each contract, or legal liability, upon wnich the action is founded, as set forth and put in controversy by the plaintiff, and, in fact, controverted by the defendant in the court below,

Heilman *against* Martin.

being for a sum exceeding one hundred dollars. Wherefore, it is the opinion of this court, that there is no error in the proceedings and judgment of the Circuit Court of Pulaski county in this case, for which they ought to be reversed, but that the same ought to be, and hereby are, in all things affirmed with costs.