RUSSELL *v.* COCKRILL, JUDGE.

4-8181                                            199 S. W. 2d 584

Opinion delivered February 10, 1947.

124

*Willis Townsend* and *Wallace Townsend,* for petitioner.

*Paul E. Talley, Wayne W. Owen* and *Max Howell,* for respondent.

ROBINS, J. Petitioners, certain citizens of the incorporated town of Cammack Village, in Pulaski county, Arkansas, ask us to grant a writ of prohibition against the respondent, judge of the third division of the Pulaski Circuit Court, commanding him not to proceed further with a certain suit instituted in said court (No. 34203) by John Cornyn as plaintiff against petitioners and others as defendants, in which Cornyn seeks to contest

a special election held in Cammack Village on November 19, 1946, on the question of annexation of Cammack Village to the city of Little Rock.

On October 3, 1946, there was filed with the county clerk of Pulaski county a petition signed by electors of Little Rock, and by electors of Cammack Village, asking for annexation of Cammack Village to Little Rock. The city council of Little Rock approved the petition and the county court made an order directing that an election be held to determine the will of the electors of each of the affected municipalities as to the proposed annexation.

The election was held on November 19, 1946. The returns, as canvassed by the county court, showed that in Little Rock 308 electors voted for the proposed annexation and 112 electors voted against it, and that in Cammack Village 141 electors voted for the annexation and 139 electors voted against it. Since the proposal received a majority of the votes cast thereon in each municipality the county court, on November 26, 1946, entered an order declaring that the proposed annexation had received the necessary popular endorsement.

On the same day John Cornyn, an elector of Cammack Village, filed suit in the circuit court, naming as defendants the petitioners, the county judge of Pulaski county, and the mayor of Little Rock, and certain other parties. In his complaint, Cornyn alleged that the petition for annexation was improperly filed with the county clerk prior to its presentation to the city council of Little Rock, that an insufficient number of electors signed this petition, that the officials holding said election were not properly named, and that seven of the 141 persons who voted in favor of said annexation in Cammack Village were not qualified electors. The names of these seven persons and the reasons for their alleged ineligibility as voters were set forth in the complaint, the prayer of which was for a judgment declaring that the proposal had failed to carry.

To this complaint there was filed a "demurrer and motion for finding of law," in which it was set forth that

the court had no jurisdiction to hear the complaint because the General Assembly has not provided a method for contesting elections such as is involved here. A motion to dismiss, in which the propriety of the action as against the county judge and the mayor of Little Rock was challenged, was also filed.

The lower court overruled the demurrer and denied the motion to dismiss, but directed that the cause be held in abeyance so as to afford petitioners an opportunity to ask this court for a writ of prohibition. The instant proceeding ensued.

The statute involved in the case at bar is Act No. 318 of the General Assembly of Arkansas of 1913, and appears (in part) in §§ 9504, 9505 and 9506 of Pope's Digest as follows:

"§ 9504. *Method of consolidation.* When the inhabitants of any city or incorporated town lying adjoining or contiguous to another smaller municipal corporation of any class in the same county (and municipal corporations separated by a river shall be deemed contiguous) shall desire that said city or incorporated town shall annex to it or consolidate with it said smaller municipal corporation, they may apply by petition in writing signed by the inhabitants so applying, to be in number not less than fifty qualified electors from each of said municipal corporations, to the city or town council of said larger municipal corporation, which petition shall describe the municipal corporations to be consolidated and shall also name the person or persons authorized to act in behalf of the petitioners in presenting said petition as hereinafter provided for. When such petition shall be presented to said council it shall be lawful for the said council to pass an ordinance in favor of said annexation and approving and ratifying said petition, in which event it shall be the duty of the person or persons named in said petition as authorized to act in behalf of the petitioners, to file said petition, together with a certified copy of said ordinance, in the office of the county clerk of the county in which said municipal corporations are situated.

"§ 9505. *Special election.* Upon presentation of said petition to the county court by said authorized person or persons, the county court shall at once order and call a special election in both of said municipal corporations on the question of said annexation, and shall give thirty days' notice thereof by publication once a week in some newspaper with a *bona fide* circulation in said territory, and by notices posted in conspicuous places therein. The court shall appoint one judge and one clerk in each ward or other division of each municipal corporation, and the mayor and city council of each of said municipal corporations shall select two judges and one clerk for each of said wards or other divisions having the qualifications of electors, to act as judges and clerks of election within said respective wards. The county court shall fix all polling places at which the voting shall take place, and said election shall be held and conducted in each corporation in the manner prescribed by law for holding elections for cities or incorporated towns so far as the same are applicable, expenses thereof to be paid by said larger city or incorporated town. . . . The returns of said elections shall be made to the county court, and the result thereof declared by said court.

§ 9506. *Election contests.* Any elector shall have the right to test the legality and fairness of said election and the declared results, in a proceeding before the circuit court and without being required to give bond for costs; provided, that no such contest shall interfere with the consolidation until finally decided. At any election held under this act all qualified electors, residents of both municipalities, shall be allowed to vote on the adoption or rejection of the proposed annexation or consolidation, and if a majority of the votes cast in each of said respective municipalities, considered as a separate and distinct unit, and without reference to the vote cast in the other thereof, shall be in favor of consolidation or annexation, then said county court shall declare by an appropriate order said annexation or consolidation consummated, and upon the making of such order, the said smaller municipal corporation and the territory comprising it shall in law be deemed and be taken to be included

128

and shall be a part of said larger municipal corporation; and the inhabitants thereof shall in all respects be citizens thereafter of said larger municipal corporation. If a majority of said votes of either municipal corporation shall be against annexation, then said city or incorporated town shall not be again permitted to attempt the consolidation within two years thereafter.''

It is first argued by petitioners that the lower court was without jurisdiction to hear the complaint of Cornyn because the first sentence of § 9506, *supra,* is unconstitutional and void in that it failed to provide a ''mode'' for the contest as required by Art. XIX, § 24, of the Constitution of Arkansas.

A cardinal rule which courts must follow in dealing with legislative enactments is that all doubts as to the validity of the legislation must be resolved in favor of the Act under consideration, and it is the duty of the courts to give to the statute such a construction, if possible, as will enable the Act and all parts thereof to be effective. *Wells, Fargo & Company's Express* v. *Crawford County,* 63 Ark. 576, 40 S. W. 710, 37 L. R. A. 371; *Compton* v. *State,* 102 Ark. 213, 143 S. W. 897.

Now it is obvious that the legislature, in enacting this statute, meant that any elector who conceived that the election had not been properly conducted might have the regularity of the election reviewed in the circuit court and relief there awarded from the result of illegal practices in the election, such as the counting of votes of those not qualified to vote. While the Act does not prescribe the form of pleadings or details of procedure, it may be assumed that the lawmakers intended that the contest proceeding would be adapted to existing procedure in the circuit court.

This provision authorizing a contest in the circuit court, as to the validity of an election of this kind, was written in practically the identical language, into the first statute on the subject, Act No. 86 of the General Assembly of 1903. It was carried forward, in almost the same wording, in the subsequent revisions of the law and

finally into the present statute. (See Act 154 of 1907, and also Act 318 of 1913.)

The failure of the General Assembly to include in the law a provision limiting the time in which such a contest should be instituted does not in itself render the statute invalid. The power of determining what period of limitation shall be applicable to a particular cause of action is an essentially nomothetic one. 34 Am. Jur. 14; *Barnhardt* v. *Morrison*, 178 N. C. 563, 101 S. E. 218; *Osborne* v. *Lindstrom*, 9 N. D. 1, 81 N. W. 72, 46 L. R. A. 715, 81 Am. St. Rep. 516. It is not urged that by any unreasonable delay in instituting the contest there has arisen such an estoppel as would bar the action; in fact Cornyn filed his complaint on the same day that the county court declared the result of the election.

That the legislature has, during all these years, continued this same provision in force is strong proof of a firm legislative intent that a forum and a remedy be provided for any affected elector to contest the result of an election on a proposal to annex one municipality to another. We conclude that the legislative will to authorize the circuit court to act in cases of this kind ought not to be thwarted merely because the wording of the statute extending such authority might be said to be inept or incomplete in some particulars.

It is next urged by petitioners that the circuit court did not have original jurisdiction in this matter. The matter of extending the boundaries of Little Rock by annexing to it the smaller municipality was not one over which the county court had exclusive jurisdiction. *City of Little Rock* v. *North Little Rock*, 72 Ark. 195, 79 S. W. 785. Nor is there anything in the constitution that forbids the legislature to authorize the circuit court to entertain a contest of this kind as an original proceeding. On the contrary, the circuit court is, under the constitution, the great reservoir of unassigned judicial power and it has original jurisdiction in all cases where jurisdiction is not expressly vested by law in some other tribunal.

Chief Justice ENGLISH, in the case of *State* v. *Devers,* 34 Ark. 188, said: "The constitution prescribes, limits and defines, with more or less accuracy, the jurisdiction to be exercised by all of the courts except the circuit courts, and instead of attempting to define their jurisdiction (other than appellate) leaves to them the great residuum of civil and criminal jurisdiction not distributed exclusively to other courts."

Chief Justice COCKRILL thus expressed the rule in the case of *Whitesides* v. *Kershaw,* 44 Ark. 377: "All jurisdiction was parceled out and distributed by the Constitution, and the jurisdiction not expressly granted to some other court, or authorized to be granted, is reserved to the circuit courts."

In the case of *Payne* v. *Rittman,* 66 Ark..201, 49 S. W. 814, a claimant to the office of city marshal filed a suit partaking both of the nature of a *quo warranto* proceeding to oust the occupant of that office and also of the nature of an election contest to question the correctness of the election returns under which the occupant claimed the office. There was no statutory provision giving authority to the circuit court to hear a contest of an election for that office. In sustaining the jurisdiction of the circuit court in that case this court said: "The defendant interposed his demurrer also to the second paragraph of the complaint, which calls in question the jurisdiction of the circuit court to try a contested election. The plaintiff, on the other hand, contends that, no other tribunal having been named by law as having jurisdiction in contests for the office, it follows that the circuit court has such jurisdiction inherently, under the 11th section of article 7 of the constitution, which reads 'as follows: 'The circuit courts shall have jurisdiction in all civil and criminal cases, the exclusive jurisdiction of which may not be vested in some other court provided for by this constitution.' It is said by this court in *Heilman* v. *Martin,* 2 Ark. 158, that 'a plea to the jurisdiction of the circuit court must show that there is some other court having jurisdiction.' And now it should appear, not only that there is some other court

having jurisdiction, but exclusive jurisdiction. *State* v. *Devers,* 34 Ark. 188.'' Like holdings are found in *Whittaker* v. *Watson,* 68 Ark. 555, 60 S. W. 652, and in *Sumpter* v. *Duffie,* 80 Ark. 369, 97 S. W. 435.

While the statute authorized the county court to canvass the returns, it did not provide that one who would question these returns must appeal from the finding of the county court. The circuit court not only has appellate jurisdiction over the county court, but is given by the constitution (Art. VlI, § 14) ''a superintending control'' over such tribunals; and this superintending control is the exercise of original and not appellate jurisdiction. *Anthony, Ex parte,* 5 Ark. 358; *Levy* v. *Lychinski,* 8 Ark. 113.

So the legislature did not create an inharmonious or unworkable scheme of procedure when it empowered the county court to canvass the returns of the election, and, at the same time, authorized the circuit court, with its constitutional power to review action of lower tribunals, to adjudicate a contest of the election in an original proceeding.

It is finally contended by petitioners that even if the circuit court should be permitted to hear the contest it should be required to eliminate from the complaint, as not germane to such a proceeding, those portions relating to the insufficiency of petitions for the election and of notice thereof. The complaint, with its allegation that enough unqualified voters cast their ballots for the proposal to change the result, stated a good cause of action within the jurisdiction of the circuit court. Since this is so, prohibition does not lie. *Russell* v. *Jacoway,* 33 Ark. 191; *Macon* v. *LeCroy,* 174 Ark. 228, 295 S. W. 31; *Bassett* v. *Bourland,* 175 Ark. 271, 299 S. W. 13; *Schley* v. *Dodge,* 206 Ark. 1151, 178 S. W. 2d 851. It is unnecessary, therefore, for us to consider the appropriateness of other allegations in the complaint, as they may never become essential to a decision of the controversy.

The writ of prohibition is denied.