Sentry Insurance Company v. Betty Dean Stuart, et al

5-4877                                    439 S.W. 2d 797

Opinion Delivered April 21, 1969

*Bethell, Stocks, Callaway & King* for appellant.

*Putman, Davis & Bassett* for appellees.

Carleton Harris, Chief Justice.    This appeal questions the corrections of the ruling of the Washington County Circuit Court in sustaining a demurrer to the complaint of appellant, Sentry Insurance Company, which had filed a suit against Betty Dean Stuart, appellee herein, and Anita D. Peterson, the company's insured, under a subrogation agreement.    Mrs. Peterson held a policy of automobile insurance with appellant company which provided, *inter alia,* payment to her for any medical expenses incurred as a result of a motor vehicle collision up to the sum of $1,000.00.    Both Mrs. Peterson and Betty Dean Stuart were residents of Fayetteville in Washington County at the time of the events hereinafter set out.

On May 17, 1966, in the state of Oklahoma, appellee was driving an automobile in which Mrs. Peterson was riding as a passenger. According to the allegations of the present complaint filed by appellant, Mrs. Stuart, driving into a service station, struck two men, and ran her automobile into a building, resulting in injuries to Mrs. Peterson, who was hospitalized as a result of such injuries, and underwent surgery. The complaint further sets out that Oklahoma has no guest statute, and it is asserted that, under the laws of that state, Mrs. Peterson had a cause of action against Mrs. Stuart for ordinary negligence. Acts on the part of Mrs. Stuart constituting negligence which were the proximate cause of the injuries and medical expenses to Mrs. Peterson, are then set forth with the allegation that appellant's insured sustained medical and hospital expenses in the sum of approximately $2,713.13.

Pursuant to the provisions of the policy heretofore mentioned, Sentry Insurance Company paid to its insured, Mrs. Peterson, the sum of $1,000.00. Under the policy, Sentry is subrogated to the rights of Mrs. Peterson as to her cause of action for recovery against any person who might be liable for the medical expenses; further, the policy provides that the insured should do nothing after loss to prejudice subrogation rights.

It is further asserted in the complaint that Mrs. Stuart and her insurance carrier, Safeco Insurance Company, were notified by Sentry of its subrogation rights by letter, dated April 6, 1967; thereafter, on August 8, 1967, Mrs. Peterson entered into a settlement with Safeco, and, as a part of such settlement, Mrs. Peterson executed a general release to Mrs. Stuart. The settlement was effectuated without the entry of a court judgment or the filing of a suit. Sentry prayed that it have judgment against Mrs. Stuart in the sum of $1,000.00, together with costs; in the alternative, the company sought judgment against Mrs. Peterson in the event that it should be determined that any action on her part

destroyed appellant's right of subrogation against Mrs. Stuart. After filing a separate motion to quash the summons, which was denied by the court, appellee filed her separate demurrer, asserting:

"(1) That the complaint of the plaintiff does not state facts sufficient to state a cause of action against this separate defendant.

(2) That there is a defect in the parties plaintiff and parties defendant.

(3) That this Court has no jurisdiction over this separate defendant."

Subsequently, the court entered its order, sustaining the demurrer, finding:

"* * * that the Oklahoma law applies in this case as reflected in the case of *Lowder versus Oklahoma Farm Bureau Insurance Company,* decided December 12th, 1967."

Appellant was given 15 days to plead further, but elected to stand upon the complaint, and the court entered its judgment dismissing appellant's complaint. From the judgment so entered, Sentry Insurance Company brings this appeal.

Appellant asserts that the court erred in its determination of Oklahoma law, and also contends that the present litigation is governed by Arkansas law, rather than Oklahoma law. As to the law in our sister state. appellee concedes that the Oklahoma courts have not yet squarely decided the question of whether, under Oklahoma law, an insurance company can bring a subrogation action against a third party tortfeasor to recover medical payments it has made to its insured. We think the Washington Circuit Court was in error in relying upon *Lowder* v. *Oklahoma Farm Bureau Mutual Insur-*

*ance Company,* 436 P. 2d 654, as authority for its holding, because the holding in *Lowder* was predicated on the rule in Oklahoma against splitting a single cause of action.

It is not necessary to determine Oklahoma law to decide this litigation, for it appears that the question of what constitutes splitting a cause of action and its permissibility is a question of procedure, rather than substantive law, and is thus governed by the law of the forum.

Dr. Robert A. Leflar, Distinguished Professor of Law, and a former member of this court, comments on this question in "The Law of Conflict of Laws," § 61, p. 110:

"There are a number of rules of law which are without much doubt treated as procedural. The question of what is the proper court in which to bring an action, for example, as between courts of law and equity, is always governed by the law of the forum. The same is true of the form of action to be brought, the sufficiency of pleadings, the effect of splitting a cause of action, and who are proper or necessary parties to the action."

In other words, the Oklahoma decision in *Lowder* was not based on substantive law.

Though we have not passed squarely on the issue of whether the insurance carrier may bring a subrogation action to recover medical payments paid to its insured, the case of *Shipley* v. *Northwestern Mutual Insurance Company,* 244 Ark. 1159, 428 S.W. 2d 268, as acknowledged by appellee, clearly indicates that such an action would be permissible. There, this court said:

"In the contract of insurance before us the insured and the insurance company entered into an

agreement whereby the insurer would be subrogated to any right possessed by the insured to reimbursement of medical expenses from a third party, in this instance a tort-feasor; the contract contained the usual cooperation clause; and it provided that the insured would do nothing after loss to prejudice the insurer's interest under subrogation. In view of those provisions, together with the fact that full medical compensation has been paid by the tort-feasor, Mrs. Baldwin, the Shipleys are precluded from recovering from Northwestern. [Citing cases.]"

The question has been passed upon by numerous other jurisdictions. An annotation on the subject, "Insurer—Rights Against Third Person," is found in 92 A.L.R. 2d 97. It is pointed out that subrogation is a normal incident of indemnity insurance, and that no act of the insured releasing the wrongdoer from liability can defeat the insurer's rights when a release is given without the knowledge or consent of the insurer, and when the wrongdoer has full knowledge of the insurer's right of subrogation under the contract.[1] Twenty-one

[1]The annotation, at Page 147, states:

"Although voicing some disagreement as to the application and effect of the rule where an element of damage is the subject of insurance, the courts in cases factually within the scope of this annotation topic have generally held that whatever the rule may be in other situations, and even if the rule against splitting a cause of action is applicable to a settlement by the insured short of judgment for a portion of the loss, nevertheless, where a tortfeasor chargeable with notice of an insurer's rights makes a compromise settlement with the insured to which the insurer is not a party, the tortfeasor either waives his right to invoke or is estopped to rely upon the rule as a defense to an action by the nonconsenting insurer as subrogee. Under such circumstances the settlement is regarded as having been made subject to and with a reservation of the rights of the insurer, and the tortfeasor is deemed to have consented to a separation of the rights of the insured and the insurer, although such rights may originally have been part of a single indivisible cause of action."

Seven jurisdictions are listed as supporting this principle. Footnote 17, in part, at Page 148, sets forth:

"The scope of the present annotation is limited to cases in

states are listed as holding that the insurer's right of subrogation is not destroyed by the insured's giving a release upon settlement of the claim. In *DeCespedes* v. *Prudence Mutual Casualty Company of Chicago, Illinois* (Florida), 193 So. 2d 224, the court said:

"The plaintiffs argue that the subrogation clause amounts to an attempt to assign a claim for personal injuries, such an assignment being invalid under the common law and not expressly sanctioned by statute. * * *

"The concept of subrogation is distinct from that of a mere assignment. Subrogation is a 'creature of equity having for its purpose the working out of an equitable adjustment between the parties by securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it * * * a wrongdoer who is legally responsible for the harm should not receive the windfall of being absolved from liability because the insured had had the foresight to obtain, and had paid the expense of procuring, insurance for his protection; since the insured has already been paid for his harm, the liability of the third person should now inure for the benefit of the insurer.' 16 Couch, Cyclopedia of Insurance Law, § 61:18 (2nd Ed. 1964).

\* \* \*

"Subrogation serves to limit the chance of double recovery or windfall to the insured, and, when exercised, tends to place the primary liability upon the tortfeasor, where it belongs. See 3 Appleman, supra, § 1675. So long as subrogation, as

which an insurer sought to assert subrogation rights against a tortfeasor who had entered into a settlement with the assured. Cases where the insured prosecuted a suit against the tortfeasor to final judgment are excluded, but cases where after settlement a judgment was entered by agreement by way of compromise are included."

applied to this medical pay provision, serves to bar double recovery, it should be upheld.''

In *Cleaveland* v. *Chesapeake & Potomac Telephone Company*, 169 A. 2d 446, though the question of an independent action on a subrogation claim was not involved, the Maryland Court of Appeals recognized the general rule as follows:

> ''The cases and text writers generally take the position that where third parties, who may be liable to an insured for a loss, effect a settlement with the latter and obtain a release from all liability with knowledge of the fact that an insurer has already paid the amount of its liability to an insured, the settlement and release will not bar the assertion of the insurer's right of subrogation. The reasoning seems to be that such release is a fraud on the insurer and constitutes no defense against it in an action to enforce its right of subrogation.''

We thoroughly agree with the reasoning of the cases cited, and hold that appellant's cause of action, arising from the subrogation agreement, was not terminated by the release given by Mrs. Peterson.

Appellee apparently recognized that this court might well take the view herein expressed, for her principal argument is directed to the fact that a correct decision of a trial court will not be reversed on appeal even though erroneous reasons may have been given for such a ruling. This is an accurate statement of the law, and we have so held on numerous occasions. *Reeves* v. *Ark-La Gas Company*, 239 Ark. 646, 391 S.W. 2d 13. Appellee then points out that, in her demurrer, she raised the objection that there was a defect in the parties plaintiff and defendant, and that, since the issue of whether all necessary parties are before the court is one of procedure, rather than substance, the law of Arkansas determines whether there was a defect in the parties. From her brief:

"Appellee submits that under Ark. Stat. 27-802,[2] the insured, as assignor of a cause of action not permitted by statute, was a necessary party to this suit and since she was not made a party, appellee was entitled to have the complaint dismissed."

As mentioned by appellee, in *Motors Insurance Corporation* v. *Coker*, 218 Ark. 653, 238 S.W. 2d 491, we held that the insured had not been made a party plaintiff as required by Ark. Stat. Ann. § 27-802 (Repl. 1962), and that it was necessary that this be done before appellant's suit could be properly maintained.

Appellee overlooks the fact that this defect cannot be reached by a demurrer. Ark. Stat. Ann. § 27-1115 (Repl. 1962) sets out that "the defendant may demur to the complaint *where it appears on its face*[3] either: * * * [Here the five grounds for filing a demurrer are set out]." The defect relied upon by appellee does not appear upon the face of the complaint. In fact, Mrs. Peterson was named a defendant, and she is mentioned several times throughout appellant's pleading. The record does reflect, however, that Mrs. Peterson was not served with summons, the docket sheet simply showing "n. serv." on this defendant. Consequently, appellee's contention is without merit.

In accordance with the views herein expressed, we hold that the trial court erred in sustaining the demurrer to appellant's complaint; the judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

---

[2]"27-802. Action by assignee—When assignor must be party.—When the assignment [of a thing in action] is not authorized by statute, the assignor must be a party as plaintiff or defendant."

[3]Emphasis supplied.