POULTRY GROWERS, INC. & TYSON'S FOODS, INC. v.
WESTARK PRODUCTION CREDIT ASSOCIATION

5-4899                                    440 S.W. 2d 531

Opinion Delivered May 19, 1969

*Crouch, Blair, Cypert & Waters* for appellants.

*Hardin, Barton, Jesson & Dawson* for appellees.

FRANK HOLT, Justice.   This is an appeal from the refusal of the trial court to transfer this cause to chancery court.   The appellee, Westark Production Credit Corporation, is a lending agency which makes loans to its members.   Loans were made to the Keeton industries which is a conglomerate operation consisting of the

parent corporation, Keeton Farms, Inc., and its wholly owned subsidiaries, Keeton Mills, Inc. and K. &. W. Produce, Inc. Appellee Westark secured its loans by a first lien upon any poultry grown and produced by its debtors. Subsequently, K. & W., the marketing arm of Keeton, assigned to appellee Westark all of the money due or to become due from appellant, Poultry Growers, Inc., which had contracted to purchase poultry produced by K. & W. Appellee Westark filed this action, alleging that by virtue of this assignment the appellant, Poultry Growers, is indebted to Westark in the sum of $26,313.11 for poultry sold and delivered by K. & W. to Poultry Growers pursuant to their contract. The appellant, Poultry Growers, admitted the contract with K. & W., the amount due under the contract, and that it had received from appellee Westark a notice and copy of the assignment of the indebtedness.

Poultry Growers is one of the wholly owned subsidiaries of appellant Tyson's Foods, Inc., which is also a conglomerate enterprise and engaged in the poultry industry. Subsequent to appropriate pleadings by the appellant Poultry Growers, the appellant Tyson's Foods, Inc. filed a motion for intervention, an intervention, and a plea for equitable setoff for $19,885.36 allegedly due from K. & W. Produce and Keeton Farms to appellants, Tyson's Foods and/or Poultry Growers. On the same date the appellant Poultry Growers amended its answer, which right it had specifically reserved, and alleged substantially the same matters contained in the intervention of its parent corporation. Also on the same date, the appellants filed a joint motion to transfer this action to chancery court in order that their respective pleas for an equitable setoff could be presented. After a hearing, it appears that the trial court denied the motion to transfer. No formal order was entered and the case was set for trial. A few days before the trial date, Tyson's filed an amendment to its original intervention, alleging a breach of contract on the part of appellee, Westark, in that Westark promised that any amount owed to Tyson's

by Keeton Farms or its subsidiary would be offset against the indebtedness of Poultry Growers.

When the parties appeared on the date set for trial, the trial court refused to allow Tyson's to amend its intervention. This was refused because the amendment was not timely filed since appellee's attorney had not received any notice. The trial court ordered that this amendment to the intervention be stricken from the record. The appellants renewed their motion to transfer the cause to chancery court which was again denied. After opening statements were made to the jury and certain stipulations were agreed upon, appellants, by leave of the court, made an offer of proof. The trial court again denied appellants' motion to transfer and granted appellee. Westark's motion for a directed verdict. Judgment was entered on the directed verdict and this appeal follows.

For reversal the appellants contend that the trial court erred in refusing to transfer the cause to chancery court to permit them to offer their respective pleas and invoke the doctrine of equitable setoff which is exclusively cognizable in equity. We think the appellants are correct. The appellee, Westark, argues that the trial court refused to allow Tyson's to intervene, that Tyson's did not appeal from that ruling and is, therefore, not properly a party before this court. Appellee further asserts that the lower court did not err in refusing to transfer the cause to chancery because Tyson's Foods is not a party to the contract between K. & W. and Poultry Growers and it cannot pierce the corporate veil of its subsidiary, Poultry Growers, nor can the subsidiary pierce the veil of its parent. Appellee submits that while no formal order is found in the record overruling Tyson's motion to intervene, "it is amply clear from the record that the court so ruled."

We find no merit in any of these contentions. Appellant Tyson's Foods, the parent corporation, filed its

motion to intervene on September 5, 1968. Subsequently there was admittedly a hearing upon the motion to intervene, the appellant K. &. W.'s amended answer, and appellants' joint motion to transfer the cause to chancery. We find no order disposing of these motions. Thereafter, or on September 27, appellant Tyson's filed an amendment to its intervention, alleging a breach of contract on the part of appellee Westark. On the day set for trial, October 1, it was revealed that neither opposing counsel nor the court had seen or received a copy of the amendment. The court struck Tyson's amendment to its intervention on the ground that it was not timely filed and again refused appellants' joint motion to transfer the cause to chancery court. As we construe the record, the trial court made no ruling at any stage of the proceedings that Tyson's could not intervene in the case. From the record it appears that the court struck appellant Tyson's amendment to its intervention, sustained appellee's objection to certain evidence, permitted appellants' offer of proof, and denied appellants' joint motion to transfer to chancery court.

In Tyson's motion for intervention, intervention, and its plea for an equitable setoff, and in Poultry Growers' amendment to its answer, which is substantially the same as Tyson's intervention, it was alleged that the subsidiaries of Tyson's, which included the appellant Poultry Growers, were operated as mere departments of the parent; that the subsidiaries of Keeton's were similarly operated as departments of the parent; and that both parent companies and their subsidiaries were conglomerate operations relating to the poultry industry; that in the dealings between the parties, Tyson's and its subsidiary companies were considered as one entity by all the parties, including the appellee Westark; that the Keeton companies were likewise considered as one entity; that in their dealings, the consolidated balance sheet of the Tyson's companies and the consolidated balance sheet of the Keeton enterprises were relied upon by each other; that the $19,885.36 which Tyson's seeks

to apply as an equitable setoff resulted from the sale of certain products, such as hatching eggs, feed, and propane gas, to the Keeton complex; that these supplies were in turn used to produce the poultry which is the subject matter of the contract between K. & W. and Poultry Growers; that the pending suit filed by appellee Westark is based upon the assignment of this contract; that appellee Westark was active in supervising and conducting the business of the Keeton conglomerate; that appellee Westark directed the purchases by Keeton and its subsidiary from the Tyson's complex and conspired with the general manager of the Keeton companies to refuse to pay the appellants with the intention to take the assets of the Keeton companies for its own benefit, leaving the Keeton companies hopelessly insolvent and the account owed to appellants uncollectible; that within a short time after the purchase of the supplies from Tyson's and after the sale of the poultry which is the subject matter of appellee Westark's complaint, Westark placed the Keeton companies in receivership and ultimately in bankruptcy, leaving the companies no assets with which to pay the account owed to Tyson's.

The appellants' proffered proof tended to substantiate these allegations contained in the intervention. This proof was expressly permitted by the court. Therefore, we cannot agree with appellee that the court had refused to permit the intervention. The court had the right to permit the intervention and the offer of proof in support thereof. Ark. Stat. Ann. § 27-815 (Repl. 1962). There it is provided that "Where, in an action for the recovery of real or personal property, any person having an interest in the property applies to be made a party, the court may order it to be done." Certainly, appellant Tyson's is an interested party in the controversy between the original parties and in the recovery of its open account.

We think that either the appellants' pleadings or the proffered proof sufficiently raised the defense of an

equitable setoff and, therefore, entitled appellants to the requested transfer to chancery court where they could have the opportunity to present their theory of this case. Ark. Stat. Ann. § 27-212 (Repl. 1962) provides:

"Where the action has been properly commenced by proceedings at law, either party shall have the right, by motion, to have any issue which before the adoption of this Code was exclusively cognizable in chancery tried in the manner hereinafter prescribed in cases of equitable proceedings, and if all the issues are such as before the adoption of this Code were cognizable in chancery, though none were exclusively so, the defendant shall have the right to have them all tried as in cases of proceedings in equity."

A defendant, when sued at law, must make all the defenses he has in that proceeding, both legal and equitable, and if any of them is exclusively cognizable in equity, the defendant is entitled to have such defense tried as in equitable proceedings and the case transferred to equity. *Childs* v. *Magnolia Petroleum Co.,* 191 Ark. 83, 83 S.W. 2d 547 (1935); *Wright* v. *Lake,* 178 Ark. 1184, 13 S.W. 2d 826 (1929). In *Washington Standard Life Ins. Co.* v. *Agee* 231 Ark. 594, 331 S.W. 2d 261 (1960), we said: "If the motion alleges facts which, if proved, entitle the movant to relief obtainable only in chancery, it is not the province of the circuit court to explore the equitable issue in its entirety with a view to transferring the case only if a preponderance of the evidence establishes the right to an equitable remedy."

We have long recognized the doctrine of equitable setoff. *Ewing-Merkel Electric Co.* v. *Lewisville Light & Water Co.,* 92 Ark. 594, 124 S.W. 509 (1909). There we quoted with approval:

"It has already been suggested that courts of equity will extend the doctrine of set-off and claims in the nature of set-off beyond the law in all cases

when peculiar equities intervene between the parties. These are so very various as to admit of no comprehensive enumeration.''

It is a familiar maxim that ''equity regards the substance and not the form.'' The relief sought by the appellants in the case at bar finds support in *Black & Decker Mfg. Co.* v. *Union Trust Co.,* 53 Ohio App. 356, 4 N.E. 2d 929 (1936); *Bromfield* v. *Trinidad Nat. Inv. Co.,* 36 F. 2d 646 (10th Cir. 1929); *In re Harr,* 319 Pa. 89, 179 A. 238 (S.C. Penn. 1935); *Knight* v. *Burns,* 22 Ohio App. 482, 154 N.E. 345 (1926); *Love* v. *Vina Banking Co.,* 168 Miss. 321, 150 So. 754 (1933).

We hold that sufficient peculiar equities are alleged in the pleadings or exist in the proffered proof, either of which entitles appellants to have this cause of action transferred to the chancery court so that their respective pleas for an equitable setoff can be presented and considered.

Accordingly, the judgment is reversed and the cause remanded.

BYRD, J., dissents.