Dalton DAVES and Sentry Indemnity Company *v.* HARTFORD ACCIDENT AND INDEMNITY COMPANY

89-347                                         788 S.W.2d 733

Supreme Court of Arkansas
Opinion delivered May 14, 1990

244

*Jim O'Hara*, for appellants.

*Kemp, Duckett, Hopkins & Spradley*, by: *Donald K. Campbell III* and *Randolph B. Hopkins*, for appellee.

JACK HOLT, JR., Chief Justice. This case involves enforcement of a statutory lien by the appellee, Hartford Accident and Indemnity Company (Hartford), against appellants, Dalton Daves, Hartford's insured, and Sentry Indemnity Company (Sentry), to collect monies paid by Hartford to Daves under an automobile liability policy. The jury found for Hartford, and the trial court entered judgment accordingly. We affirm as modified.

On June 8, 1986, Daves was injured in an automobile collision with Kathryn Breyel. Daves was insured by Hartford

under a liability policy that included medical payment and wage loss coverage as required by Ark. Code Ann. § 23-89-202 (1987). Hartford paid Daves $9,060 under these coverages.

After demand by Hartford, Sentry (Breyel's insurer) paid Daves' collision damage. However, Sentry did not reimburse Hartford for the medical and wage loss payment. In May of 1987, Daves filed a personal injury suit against Breyel. On October 16, 1987, Daves settled with Breyel and Sentry, by which Daves received $25,000. The trial court dismissed the suit with prejudice. As part of the settlement, Daves agreed to indemnify and hold Sentry harmless for all claims that "Hartford may make against Sentry by virtue of the medical PIP [personal injury protection] and subrogation lien that Hartford is making in this case" in exchange for Sentry's not placing Hartford's name on the settlement check.

Prior to the settlement, Hartford notified Sentry on a number of occasions of its subrogation claim for reimbursement for the amount it paid for Daves' medical bills and lost wages. Hartford first learned of the lawsuit and settlement on December 9, 1987, when Sentry wrote Hartford a letter advising Hartford that Sentry would not "honor your subrogation claim in as much as your insured's attorney agreed to waive all subrogation rights . . . ." On December 28, 1987, Hartford notified Daves concerning its claim, but Daves refused to pay.

On March 2, 1988, Hartford filed suit against Daves and Sentry alleging that Hartford, pursuant to its lien rights and third party beneficiary status, was entitled to judgment in the amount of $9,060 plus interest. Appellants answered, stating that Hartford had waived its subrogation rights by not taking steps to procure protection of those rights during the litigation between Daves and Breyel and that Hartford was estopped from bringing any claim for its subrogation interest because Hartford informed Daves that its interest had been paid by Sentry, prior to the conclusion of the litigation, and Daves relied on this statement in reaching a settlement and dismissing the litigation.

At the close of Hartford's case, appellants moved for a directed verdict on the basis that Hartford had not proved it was a third-party beneficiary. The trial court denied the motion. At the close of all the evidence, both Sentry and Daves again moved for a

directed verdict on the ground that there was no proof in the record that Hartford was entitled to third-party beneficiary status. In addition, Sentry moved for a directed verdict in its favor on the basis that Hartford had no cause of action under the lien statute because the settlement money was in the hands of Daves at the time the suit was filed and because a direct action against Sentry is not allowed without Hartford's first filing a suit against the insured. The court denied the motions and submitted the case to the jury on the issue of estoppel and damages. In answering the interrogatories, the jury found that (1) Hartford was not estopped to assert its lien rights, and that (2) the amount of damages suffered by Hartford was $9,060. Judgment was entered for that amount plus interest. From this order, Daves and Sentry appeal.

## I. JURISDICTION

Appellants contend that the circuit court had no jurisdiction to enforce Hartford's statutory lien, and, therefore, the trial court erred in directing a verdict for Hartford against Daves. This point is meritless.

Under the Arkansas Constitution, circuit courts have original jurisdiction in all cases where jurisdiction is not expressly vested in another court. *Russell* v. *Cockrill, Judge*, 211 Ark. 123, 199 S.W.2d 584 (1947). In order to successfully attack the circuit court's jurisdiction, a party must show that another court has been given exclusive jurisdiction of the subject matter. *Id.*

Appellants have not cited any authority for the proposition that Hartford's action to enforce its statutory lien or subrogation rights and recover money damages is cognizable exclusively in equity. Furthermore, it is clear that Hartford's action is cognizable in law. First of all, it is well established that an action for money damages is cognizable in law. *See Priddy* v. *Mayer Aviation, Inc.*, 260 Ark. 3, 537 S.W.2d 370 (1976). Secondly, this court has allowed statutory liens and subrogation rights to be enforced in circuit court. *Henry, Walden & Davis* v. *Goodman*, 294 Ark. 25, 741 S.W.2d 233 (1987); *Farm Bureau Mut. Ins. Co.* v. *Riverside Marine Remfg.*, 275 Ark. 585, 647 S.W.2d 462 (1983).

This court has held that where a defendant raises a

defense cognizable only in equity, the case must be heard in equity. *See Poultry Growers* v. *Westark Prod. Credit*, 246 Ark. 995, 440 S.W.2d 531 (1969). However, the doctrine of estoppel *in pais* is available both in law and equity. *Branch* v. *Standard Title Co.*, 252 Ark. 737, 480 S.W.2d 568 (1972). *See also United States Fire Ins. Co.* v. *Montgomery*, 256 Ark. 1047, 511 S.W.2d 659 (1974). Estoppel *in pais* is the doctrine by which a person may be precluded by his acts or conduct or by failure to act or speak under circumstances where he should do so, from asserting a right which he otherwise would have had. *See Branch, supra.*

Appellants, in their answer, asserted that Hartford had waived its subrogation rights by not taking steps to procure protection of those rights during the litigation between Daves and Breyel and that Hartford was estopped from bringing any claim for its subrogation interest in that Hartford informed Daves that its interest had been paid by Sentry, prior to the conclusion of the litigation. This is essentially an estoppel *in pais* argument, which is cognizable in law.

## II. THIRD-PARTY BENEFICIARY STATUS

For reversal, appellants contend that the trial court erred in finding as a matter of law for Hartford against Sentry and Daves that Hartford was a third-party beneficiary of the settlement of the personal injury lawsuit. The court made no such finding, nor was the jury instructed on the law regarding third-party beneficiaries. Since the only question, besides damages, placed before the jury by the trial court was whether or not Hartford was estopped to assert its lien rights, it is obvious that the court concluded, as a matter of law, that Hartford had established its rights to a statutory lien.

## III. STATUTORY LIEN

Arkansas Code Ann. § 23-89-207 (1987) provides:

Insured's rights of reimbursement.

(a) Whenever a recipient of § 23-89-202(1) and (2) benefits recovers in tort for injury, either by settlement or judgment, the insurer paying the benefits has a right of reimbursement and credit out of the tort recovery or settlement, less the cost of collection, as defined.

(b) All cost of collection thereof shall be assessed against the insurer and insured in the proportion each benefits from the recovery.

(c) The insurer shall have a lien upon the recovery to the extent of its benefit payments.

██ This code provision grants an insurer, who has paid benefits to its insured under section 23-89-202(1) and (2), a lien upon, and a right of reimbursement from, any tort recovery or settlement obtained by its insured. *See Northwestern Nat'l Ins. Co.* v. *Amer. States Ins. Co.*, 266 Ark. 432, 585 S.W.2d 925 (1979); *Carnathan* v. *Farm Bureau Ins. Co.*, 288 Ark. 399, 705 S.W.2d 885 (1986). *See also National Inv. Fire and Cas. Ins. Co.* v. *Edwards*, 5 Ark. App. 42, 633 S.W.2d 41 (1982). This right of reimbursement is in the nature of subrogation. *Northwestern Nat'l Ins. Co., supra.* The underlying principle of subrogation rights is to avoid double recovery by the insured. *Farm Bureau Mut. Ins. Co., supra.*

██ In this case, Hartford paid benefits to Daves under section 23-89-202(1) and (2), and Daves later settled with the tortfeasor and her insurer, Sentry, for $25,000. Under section 23-89-207, Hartford was entitled to a lien upon, and a right of reimbursement from, the settlement proceeds in the amount it paid in benefits to Daves, less its share of the costs of collection.

## IV. LIABILITY OF SENTRY

Appellants do not dispute that Hartford is entitled to enforce its statutory lien against Daves and recover the amount it paid in benefits to Daves, less its share of the costs of collection, from the settlement proceeds. However, Sentry asserts that Hartford has no cause of action against it for the statutory lien and, accordingly, that the trial court erred in directing a verdict for Hartford against Sentry.

Whether or not Hartford can enforce its lien against Sentry is a question of first impression in this state. We hold that Hartford's lien is enforceable.

Initially, Sentry contends that it is normal procedure for an insurer, in attempting to subrogate a claim, to file suit against the negligent party, not that party's insurer. Although this court has

not addressed whether a suit against a wrongdoer's insurer is proper, other courts have allowed such actions. *See Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal. 2d 423, 296 P.2d 801 (1956). While it may be the "normal" procedure for a subrogated insurer to file a subrogation claim against the wrongdoer, we see no reason, and appellants offer none, why an insurer cannot enforce its claim against the wrongdoer by an action against the wrongdoer's insurer.

Sentry, citing *Trinity Universal Ins. Co.* v. *State Farm Mutual Auto Ins. Co.*, 246 Ark. 1021, 441 S.W.2d 95 (1969), claims that Hartford's suit is a direct action, which may be brought only after obtaining a judgment against the insured under Ark. Code Ann. § 23-89-101 (1987). We disagree.

Sentry cites dicta in *Trinity* for the proposition that Hartford cannot sue Sentry directly under section 23-89-101, which concerns subrogation of an injured person to the right of an insured and the right of the injured person to sue the insurer directly. The case at bar can easily be distinguished in that it involves an attempt by an insurer who has paid benefits to its insured, pursuant to section 23-89-202, to be reimbursed from settlement proceeds subsequently received by the insured in a settlement with a tortfeasor and her insurer under section 23-89-207.

In sum, we find nothing in *Trinity* that prohibits Hartford from filing a direct action against Sentry pursuant to section 23-89-207.

Finally, appellants argue that a statutory lien cannot benefit Hartford in a suit against Sentry when the proceeds have been paid over to Daves.

Prior to the settlement between Sentry and Daves, Hartford repeatedly notified Sentry of its subrogation claim. Thereafter, Sentry, with full knowledge of Hartford's interest, paid Daves pursuant to the settlement, without notifying Hartford of the settlement or Daves' suit, and then excluded Hartford's name from the settlement check in exchange for Daves' agreement, prepared by Sentry, to indemnify Sentry for all claims "Hartford may make against Sentry by virtue of the medical PIP and subrogation lien that Hartford is making in this case."

█ Obviously, from the wording in its agreement, Sentry's maneuvers were simply a well designed and calculated attempt to escape its acknowledged duty to Hartford. Under the circumstances, we hold that Sentry cannot legally or equitably ignore its responsibility to pay Hartford's lien even though it may have parted with the settlement proceeds through improvident payment to Daves.

## V. ADMISSION OF TESTIMONY

Appellants argue that the trial court abused its discretion in not admitting into evidence the relevant testimony of Jon Ahrens concerning Hartford's policy on compromising statutory lien claims.

Jon Ahrens, claims manager for Hartford, was asked on cross-examination if he, in handling subrogation claims, ever agreed to accept less than the amount of the claim. Hartford's counsel objected on irrelevancy grounds, and the court sustained the objection, but agreed to let appellants make a proffer. In the proffered testimony, Ahrens testified that although the company does compromise subrogation claims, it does not compromise statutory lien claims, "like under PIP benefits." Appellants' attorney then asked him what he would do if there were not enough coverage to pay the company, the insured, and the insured's lawyer. He testified that he did not know because he had never had such a claim, but added a PIP claim "might" be subject to compromise if "you had a PIP claim where you ran five thousand medical and five thousand work loss, you had a $10,000 lien and minimum limits twenty-five thousand and so forth . . . ."

Appellants contend that this testimony was relevant to the issue of Daves' lost opportunity to compromise Hartford's claim, which went to the issue of detrimental reliance under the estoppel theory asserted by appellants.

█ In viewing the proffered testimony, it is not readily determinable under what circumstances Hartford would compromise a PIP claim. Accordingly, the trial court could not determine the relevancy of this testimony. As a result, no abuse of discretion occurred.

## VI. COST OF COLLECTION

Appellants contend that the trial court erred in not reducing the amount of Hartford's judgment by Daves' cost of collection incurred in the personal injury lawsuit. This argument is essentially that Hartford should pay its share of the cost of collection.

■ Section 23-89-207(b) provides that all costs of collection in an action to recover for injury "shall be assessed against the insurer and insured in the proportion each benefits from the recovery." The costs of collection under this section include reasonable attorney's fees. *Northwestern Nat'l Ins. Co., supra.*

In this case, Daves did not notify Hartford of his suit against the tortfeasor so that Hartford could intervene to protect its interest and then refused to reimburse Hartford out of the settlement recovery, contrary to the dictates of section 23-89-207(a). As a result, Hartford was forced to bring a different action to enforce its claim, thereby incurring separate expenses and attorney's fees.

■ Accordingly, Hartford contends that it has paid its share of the "costs" and thus the trial court did not err in refusing to reduce the amount of its judgment. However, Hartford's costs were not "costs of collection" of the tort settlement. Although the end result may be unjust, we must follow the code provision, which dictates that Hartford be assessed costs of collection in the proportion it benefited from the recovery by Daves.

The amount of the settlement was $25,000; Hartford, in enforcing its lien, received $9,060 from the settlement, or 36.24% of the settlement. Daves' costs of collection were $7,939 ($7,500 in attorney's fees and $439 in other expenses). Hartford's share of the fees and expenses is $2,877.09. Accordingly, we reduce the amount of Hartford's award from $9,060 to $6,182.91.

Affirmed as modified.