## LIBERTY MUTUAL INSURANCE COMPANY *v.* Donald WHITAKER

CA 03–304                                         128 S.W.3d 473

Court of Appeals of Arkansas
Division III
Opinion delivered November 12, 2003

414

*Ledbetter, Cogbill, Arnold & Harrison, LLP*, by: *James A. Arnold, II, R. Chris Parks*, and *Kimberly A. McMillen*, for appellant.

*Laser Law Firm*, by: *Sam Laser* and *Brian A. Brown*, for appellee.

ANDREE LAYTON ROAF, Judge. Appellant Liberty Mutual Insurance Company ("Liberty Mutual") appeals from the trial court's grant of summary judgment to appellee Donald Whitaker. The trial court found that Liberty Mutual was not entitled to pursue its subrogation interest against Whitaker and recover workers' compensation benefits it paid to its insured as a result of a motor-vehicle

accident caused by Whitaker's negligence. On appeal, Liberty Mutual argues that the trial court erred in granting summary judgment to Whitaker. We agree, and reverse and remand.

This lawsuit arises from a motor-vehicle accident involving Rose LaFountaine-Glover ("Glover") and Whitaker on April 14, 1999, in which Whitaker's vehicle crossed the center line and struck the front of Glover's vehicle. Glover sustained injuries and incurred other damages as a result of the accident. At the time of the accident, Glover was acting within the course and scope of her employment with TCBY Systems, Inc., of Little Rock ("TCBY"). Appellant Liberty Mutual is the workers' compensation carrier for TCBY, and it accepted Glover's injuries as compensable, paying workers' compensation benefits in the amount of $14,370.31 to Glover.

On March 15, 2000, Glover filed a lawsuit against Whitaker, seeking damages resulting from the motor-vehicle accident. Southern Farm Bureau ("Southern Farm"), Whitaker's liability insurance carrier, acting on behalf of its insured, entered into a settlement agreement with Glover two days later, on March 17, 2000. In exchange for payment of $45,000, Glover signed a release agreement in favor of Whitaker and Southern Farm. The agreement provided that Whitaker and Southern Farm were released from "any and all claims" on account of or in "any way growing out of the injuries sustained by" Glover in the accident. The settlement agreement was not approved by a court or the Workers' Compensation Commission. An order was entered on March 31, 2000, dismissing Glover's complaint with prejudice.

On February 4, 2002, Liberty Mutual filed suit against Glover and Whitaker, jointly and severally, seeking to recover the workers' compensation benefits it had paid to Glover. Liberty Mutual's complaint was based on the subrogation provisions of Ark. Code Ann. § 11-9-410 (Repl. 2002), as well as the theories of negligence, unjust enrichment, and restitution.

Whitaker subsequently filed a motion for summary judgment, alleging that Liberty Mutual could not recover from him as a matter of law. Whitaker alleged that he had nothing to do with the settlement agreement, which was procured by his insurance company, and that Liberty Mutual's claim for a subrogation lien did not state a cause of action against him because he never had control of the funds. Whitaker also asserted that Liberty Mutual's claim against him was barred by the release signed by Glover and

that its claim for unjust enrichment and restitution did not state a cause of action against him because he never had possession of the settlement funds. Whitaker attached the affidavit of Southern Farm's insurance adjuster, who stated that Southern Farm never had any notice of Liberty Mutual's purported lien and that Whitaker had no control over the settlement or custody of the funds.

In its response to Whitaker's motion for summary judgment, Liberty Mutual argued that it was entitled to a subrogation lien on the proceeds of the settlement agreement under section 11-9-410 and that Whitaker and Glover had violated the requirements of that statute by not giving it notice of the settlement and by not having the settlement approved by a court or the Commission. Liberty Mutual also argued that the release by Glover did not preclude it from pursuing judgment against Whitaker because the release did not address its subrogation rights. In addition, Liberty Mutual stated that it had a valid cause of action for unjust enrichment and restitution against Whitaker. It attached the affidavit of its claims manager, Kris Opal, who stated that Liberty Mutual had sent a letter to Whitaker on October 25, 1999, notifying him that it had paid benefits to Glover and that it was entitled to a subrogation lien to recover such payments. Opal also stated that Liberty Mutual received no notice that a lawsuit was filed or that a settlement agreement was reached until after March 17, 2000.

After a hearing, the trial court found that Liberty Mutual failed to protect its own interests by failing to give notice of its lien to Southern Farm and that notice to Whitaker was not adequate. The trial court stated that Southern Farm had procured a full, final, and complete release in favor of Whitaker, without notice of any lien by Liberty Mutual, and that Whitaker was not subject to suit for the lien because he had been fully and properly released by Glover. The trial court granted partial summary judgment to Whitaker, stating that Liberty Mutual's claims against Glover were not affected by the order. Liberty Mutual then moved to have its claims against Glover dismissed without prejudice, which was granted by the trial court. Liberty Mutual now appeals from the trial court's grant of summary judgment to Whitaker.

Liberty Mutual argues two main points on appeal: (1) that the trial court misapplied and incorrectly interpreted Ark. Code Ann. § 11-9-410 by ruling that Liberty Mutual was required to give notice of its lien to Whitaker's insurer in order to protect the

lien; and (2) that the trial court erred by ruling that the release procured by Whitaker without the knowledge or consent of Liberty Mutual prohibits Liberty Mutual from pursuing its right of subrogation against him. More specifically, Liberty Mutual asserts that Glover and Whitaker, along with Whitaker's insurer, failed to comply with the settlement requirements provided in Ark. Code Ann. § 11-9-410(c). In addition, Liberty Mutual contends that the release signed by Glover in favor of Whitaker is not effective to bar its claims against Whitaker because it had no notice of the release agreement. Liberty Mutual thus contends that it is entitled under Ark. Code Ann. § 11-9-410 to pursue an action against Whitaker, the third-party tortfeasor, to recover the workers' compensation benefits it paid to Glover and that the trial court erred in interpreting this statute and in finding that it was required to give notice to Southern Farm to protect its lien.

On appeal, this court need only decide if the grant of summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000). The burden of sustaining a motion for summary judgment is on the movant. *Id.* All proof submitted must be viewed in the light most favorable to the party resisting the motion, and any doubts or inferences are resolved against the moving party. *Id.* Once the moving party has established a prima facie entitlement to summary judgment by affidavits or other supporting documents, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* Summary judgment is appropriate under Ark. R. Civ. P. 56(c) when there is no genuine issue as to a material fact and when the moving party is entitled to summary judgment as a matter of law. *Id.*

According to Ark. Code Ann. § 11-9-410(a), the making of a claim for compensation against any employer or carrier for the injury or death of an employee shall not affect the right of the employee to make a claim or maintain an action in court against any third party for the injury, but the employer or the employer's carrier shall be entitled to reasonable notice and opportunity to join in the action. If the employer or carrier does join in the action brought by the employee, they are entitled to a "first lien" upon two-thirds of the net proceeds recovered in the action, or so much as is necessary to discharge the actual liability of the employer and

the carrier for compensation paid to the injured employee, after the payment of reasonable costs of collection. Ark. Code Ann. § 11-9-410(a)(1)(B) and (a)(2). In addition, sections 11-9-410(b) and (c) state:

(b) *Subrogation.* (1) An employer or carrier liable for compensation under this chapter for the injury or death of an employee shall have the right to maintain an action in tort against any third party responsible for the injury or death. However, the employer or the carrier must notify the claimant in writing that the claimant has the right to hire a private attorney to pursue any benefits to which the claimant is entitled in addition to the subrogation interest against any third party responsible for the injury or death.

(2) After reasonable notice and opportunity to be represented in the action has been given to the compensation beneficiary, the liability of the third party to the compensation beneficiary shall be determined in the action, as well as the third party's liability to the employer and carrier.

(3)(A) After recovery shall be had against the third party, by suit or otherwise, the compensation beneficiary shall be entitled to any amount recovered over and above the amount that the employer and carrier have paid or are liable for in compensation, after deducting reasonable costs of collection.

(B) In no event shall the compensation beneficiary be entitled to less than one-third (1/3) of the amount recovered from the third party, after deducting the reasonable cost of collection.

(4) An employer or carrier who is liable for compensation under this chapter on account of injury or death of an employee shall be entitled to maintain a third party action against the employer's uninsured motorist coverage or underinsured motorist coverage.

(5) The purpose and intent of this subsection is to prevent double payment to the employee.

(c) *Settlement of Claims.* (1) Settlement of claims under subsections (a) and (b) of this section must have the approval of the court or of the commission, except that the distribution of that portion of the settlement which represents the compensation payable under this chapter must have the approval of the commission.

(2) Where liability is admitted to the injured employee or his or her dependents by the employer or carrier, the cost of collection may be deducted from that portion of the settlement under subsections (a) and (b) of this section representing compensation, upon direction and approval of the commission.

(3) No party shall settle a claim under subsections (a) and (b) of this section without first giving three (3) days written notice to all parties with an interest in the claim of the intent to settle.

(4) Each party with an interest in a claim under subsections (a) and (b) shall cooperate with all other parties in litigation and settlement of such claims.

As Liberty Mutual asserts, Glover, Whitaker, and his insurer failed to comply with the requirements of section 11-9-410(c) in settling Glover's claims against Whitaker because they did not receive the approval of a court or the Commission, nor did they give Liberty Mutual three days' written notice of their intent to settle. Although it is clear that the settlement agreement in this case violated the provisions of section 11-9-410(c), the statute does not address what Liberty Mutual's remedy is for this violation, or whom it may be against. Although there is no case that is precisely on point with the issue in this case, there are a number of cases cited by the parties that interpret this statute in similar factual situations.

In *St. Paul Fire & Marine Insurance Co. v. Wood*, 242 Ark. 879, 416 S.W.2d 322 (1967), the injured employee, Wood, filed suit against the tortfeasor, and the workers' compensation carrier, St. Paul, intervened in the action. Wood and the tortfeasor then reached an agreement with respect to a settlement amount, but St. Paul and the tortfeasor were unable to reach an agreement. The employee and tortfeasor thus "settled around" St. Paul, and the release agreement preserved all of St. Paul's rights against the tortfeasor. This left St. Paul with "all of the right of subrogation against [the tortfeasor] that was given to it by law and that it would have had if Wood had taken no action whatsoever." *Id.* at 889. St. Paul then filed suit against Wood, claiming entitlement to a lien on the proceeds of the settlement. The supreme court, employing a "technical" definition of "recovery," held that St. Paul was not entitled to a lien upon the proceeds in this situation, as the settlement agreement had reserved to St. Paul its own cause of

action against the tortfeasor. *Id.* Where the suit against the tort-feasor proceeds to judgment, however, or the settlement agreement does not preserve the rights of the carrier against the tortfeasor, the carrier is then entitled to a lien on the recovery. *Id.* at 886-88. The court also noted that allowing the carrier to pursue its own claims against the tortfeasor would not violate the rule against splitting causes of action, because that rule inures to the benefit of the defendant and the defendant has specifically consented to the splitting of the cause of action between the carrier and the employee by the terms of the settlement agreement. *Id.* at 889.

The supreme court further clarified its holding in *Wood* in *Travelers Insurance Co. v. McCluskey*, 252 Ark. 1045, 483 S.W.2d 179 (1972), and stated that the employee may "settle around" the compensation carrier and reserve the carrier's rights against the tortfeasor; however, since the purpose of the statute is to protect both the compensation carrier and the employee, the court stated that it would thereafter require that the proceeds of any settlement be subject to the lien of the employer or carrier, unless the settlement has been approved by a court having jurisdiction or by the Commission, after the carrier had been afforded adequate opportunity to be heard.

In *Amos v. Stroud*, 252 Ark. 1100, 482 S.W.2d 592 (1972), the court reiterated that there are not two separate and distinct causes of action against the third-party tortfeasor by the compensation carrier and the injured employee; instead, there is only one cause of action, which may be split only with the consent of the defendant in the tort action.

Subsequently, in *Jackson Cookie Co. v. Fausett*, 17 Ark. App. 76, 703 S.W.2d 468 (1986), this court held that where an employer and carrier have had reasonable notice and an opportunity to join in a third-party action, the employer and carrier must intervene in the action to have a right to a credit against the proceeds. The court in *John Garner Meats v. Ault*, 38 Ark. App. 111, 828 S.W.2d 866 (1992), applied the holding in *Fausett* and found that the employer and carrier had waived their right to a lien against the settlement proceeds by failing to intervene in the third-party action where they had notice and an opportunity to join the lawsuit, despite the employee's and third-party's failure to comply

with section 11-9-410. *Id.* By not intervening, this court found that the carrier waived the right that the statute was designed to protect. *Id.*

Finally, in *Wentworth v. Sparks Regional Medical Center*, 58 Ark. App. 242, 950 S.W.2d 221 (1997), a case relied upon heavily by Liberty Mutual, the injured employee settled with the third-party tortfeasor, without notice to her compensation carrier and without court or Commission approval. The release executed by the employee failed to reserve and protect any subrogation or lien rights of the carrier, and it operated as a bar to any action by the carrier against the tortfeasor. The employee never filed a lawsuit against the tortfeasor. *Id.* The court noted that an employee and a tortfeasor may settle around the employer or carrier's right to a lien on the settlement proceeds where at least three conditions are met: (1) the settlement agreement between the employee and third party must protect the statutory right of the employer or carrier to pursue an action against the third party tortfeasor; (2) the employer or carrier must be provided reasonable notice of the proposed settlement and an opportunity to be heard; and (3) the settlement agreement must be approved by a court or the Commission. *Id.* The court held that the settlement agreement in that case failed to meet these conditions and thus found that the carrier was entitled to a credit based upon the settlement. *Id.* The court also noted that section 11-9-410(c) had been revised to make these conditions even more explicit, by requiring that the parties to a settlement give three days' written notice of their intent to settle and that they cooperate with all other parties with an interest in a settlement. *Id.*

Although none of these cases are controlling of the present case, their holdings are relevant to the interpretation given to section 11-9-410 by the appellate courts. From these cases, it is clear that Liberty Mutual in this case was denied its statutory right either to participate in the action against the tortfeasor or to have notice of the settlement and an opportunity to be heard. It is also clear that Liberty Mutual is entitled, under the holding in *Wentworth, supra,* to a credit against the settlement proceeds; however, that case involved the employee and not an action by the carrier against the tortfeasor as in this case. Liberty Mutual does not argue that it cannot pursue its lien against Glover, and it is apparent

under *Wentworth* that it may do so. Rather, Liberty Mutual asserts that it may also assert its lien against Whitaker in this situation.

The trial court found that Liberty Mutual was not entitled to assert its lien against Whitaker because it had not given notice of its lien to Southern Farm and because the release signed by Glover barred any action by Liberty Mutual against Whitaker. First addressing the issue of the release, Liberty Mutual argues that it cannot be bound by this release agreement because it did not have notice of the agreement. Liberty Mutual primarily relies on general insurance case law for the proposition that no act of the insured releasing the wrongdoer from liability can defeat the insurer's rights when a release is given without the insurer's knowledge or consent, and when the wrongdoer has full knowledge of the insurer's right of subrogation. *Floyd v. Home Ins. Co.*, 250 Ark. 915, 467 S.W.2d 698 (1971); *Sentry Ins. Co. v. Stuart*, 246 Ark. 680, 439 S.W.2d 797 (1969); *see also St. Paul Fire & Marine Ins. Co. v. Murray Guard, Inc.*, 343 Ark. 351, 37 S.W.3d 180 (2001); *Daves v. Hartford Accident & Indem. Co.*, 302 Ark. 242, 788 S.W.2d 733 (1990).

In *Sentry*, *supra*, the insurer filed suit against its insured and the third-party wrongdoer to recover medical payments it made to its insured after the insured and the wrongdoer had settled the claim without notice to the insurer. The court held that the insurer's cause of action against the wrongdoer was not terminated by the release executed by the insured. *Id.* Also, in *Daves*, *supra*, the insured filed suit against the tortfeasor and subsequently settled the suit without knowledge of his insurer, Hartford. Hartford then brought suit against its insured and the tortfeasor's insurer, Sentry, claiming a statutory lien on the proceeds of the settlement. Although the release specifically stated that the insured would indemnify Sentry against future claims by Hartford, the court found that Hartford was entitled to assert its statutory lien against Sentry, noting that Sentry had full knowledge of the subrogation claim and could not ignore its responsibility to pay the lien even though it may have made improvident payment of the settlement proceeds to the insured. *Id.* In *Hartford Insurance Group v. Carter*, 251 Ark. 680, 473 S.W.2d 918 (1971), the court reached the opposite result and held that the release was effective against the compensation carrier; however, the court seemed to partially base its holding upon the fact that the release was executed prior to any

workers' compensation claim being filed, and in addition, the wrongdoer had no notice of any potential claim by the carrier.

It is undisputed in this case that the release agreement was executed without Liberty Mutual's knowledge or consent. Also, Liberty Mutual's affidavit states that a letter was sent to Whitaker, the wrongdoer, informing him of its subrogation right prior to the settlement in this case, and Whitaker did not dispute this fact. Thus, we conclude that the trial court was incorrect in finding that the release operated to bar any claims by Liberty Mutual against Whitaker.

The trial court also based its decision on the fact that Liberty Mutual did not give notice of its lien to Whitaker's insurance company, Southern Farm, and the trial court found that notice to Whitaker was not sufficient under the circumstances. As Whitaker argues, in all of the cases cited by Liberty Mutual in support of its contention that the release was ineffective to bar its action, the insurer gave notice of its subrogation lien to both the tortfeasor and the tortfeasor's insurer. *See, e.g., Daves, supra; Sentry, supra.* However, as Whitaker admits, there is no authority holding that Liberty Mutual was required to give notice to Whitaker's insurance company. In fact, the statute at issue in this case, section 11-9-410, instead explicitly requires that Liberty Mutual, the insurance carrier, be notified of any litigation or settlement. While the cases holding that a release is not effective if there is no notice given to the insurer require that the tortfeasor have knowledge of the subrogation claim, none of these cases require that notice also be given to the tortfeasor's insurance company.

Finally, the statutory intent of section 11-9-410 is to protect the rights of both the compensation carrier and the employee, as well as to ensure that the employee is not doubly compensated. *Wentworth, supra;* Ark. Code Ann. § 11-9-410(b)(5). As stated in *Sentry, supra,* subrogation limits the chance of double recovery or windfall to the insured, and, when exercised, tends to place the primary liability upon the tortfeasor, where it belongs. Allowing Liberty Mutual to assert its right to a lien against Whitaker, the tortfeasor, as well as its insured, Glover, serves to further the statutory intent of preventing double recovery by the insured by also placing primary responsibility upon Whitaker, who caused the accident by his negligence.

In conclusion, we find no authority to support the trial court's findings that the release executed by Glover is effective to bar Liberty Mutual's action against Whitaker or that Liberty Mutual's failure to give notice of its claim to Southern Farm precludes its suit against Whitaker, and we therefore conclude that summary judgment was inappropriate in this case.

Reversed and remanded.

PITTMAN and ROBBINS, JJ., agree.