2011 Ark. App. 435
**Sheila MYERS and Trevor Myers, Appellants**

v.

**COOPER CLINIC, P.A., and Pathology Services Laboratory, P.A., Appellees.**

**No. CA 10–689.**

Court of Appeals of Arkansas.

June 15, 2011.

25. *Id.*

26. *Grant, supra; Hunter, supra.*

Timothy Lloyd Brooks, Fayetteville, for appellants.

G. Allen Wooten, Fort Smith, Robert Frazier and Emily M. Reynolds, Rogers, for appellees.

DAVID M. GLOVER, Judge.

In this medical-malpractice case, a gastric biopsy specimen taken from Sheila Myers was contaminated with tissue from an unknown male who had mantle-cell lymphoma, resulting in Sheila receiving the mantle-cell diagnosis and having further procedures that were later determined to be unnecessary. Sheila and her husband, Trevor, appeal from an April 13, 2010 order that 1) granted Cooper Clinic's motion for summary judgment, 2) denied (again) Pathology Services Lab's motion to dismiss for improper venue, and 3) transferred the case against Pathology Services Lab to Pope County. They raise the following issues: 1) whether summary judgment is proper against a party who has established a prima facie showing of negligence predicated on the doctrine of *res ipsa loquitur*, and 2) whether expert testimony is always required to survive summary judgment in a medical-malpractice action. In addition, the Myerses contend that if we reverse the trial court's grant of summary judgment, then we should remand the entire case, *i.e.*, including the portion involving Pathology Services Lab, to Sebastian County Circuit Court with instructions for it to rehear the venue issues. We affirm the grant of summary judgment in favor of Cooper Clinic. We

do not address the denial of Pathology Services' motion to dismiss or the trial court's transfer of that portion of the case to Pope County.[1]

### Background

In its letter opinion, the trial court outlined the procedural backdrop for its grant of summary judgment in favor of Cooper Clinic:

This case began as a dual filing in Pope County Circuit Court (Case No. 2006–393) and in Sebastian County Circuit Court in 2006. The Plaintiff based her action on an upper endoscopy biopsy performed on her stomach by Dr. Jacob Joseph on August 23, 2004. After this biopsy procedure, her biopsy material was transferred from Cooper Clinic to a courier employed by Pathology Services Laboratory. This courier transported the biopsy material to the Pathology Services Laboratory location in Pope County for processing. The Plaintiff alleged that the biopsy material was contaminated by a male specimen at some point in the procedure, transport, or processing.

The Pope County action was dismissed without prejudice pursuant to Rule 12(b)(8) on Jan. 23, 2007. In the Sebastian County action, Separate Defendants Dr. Laura Lowther and Pathology Services Laboratory, P.A. filed a Motion to Dismiss for lack of proper venue on Oct. 5, 2007. The Court denied this Motion on Dec. 4, 2007 and maintained venue over the case. However, on March 11, 2010, the Arkansas Supreme Court clarified the medical malpractice venue statute in *Clark v. Johnson Regional Medical Center*, 2010 Ark. 115 [362 S.W.3d 311], No. CV–2007–1517. Thereafter, Separate Defen-

dants Dr. Laura Lowther and Pathology Services, P.A. filed a Motion for Reconsideration on March 15, 2010.

Separate Defendants Dr. Jacob Joseph and Cooper Clinic, P.A. filed a Motion for Summary Judgment on January 19, 2010. Prior to the hearing on these motions, the Plaintiff moved to dismiss separate defendants Jacob Joseph, M.D. and Laura Lowther, M.D. without prejudice. That motion was granted and therefore the medical doctors are not affected by today's ruling.

With that backdrop, the trial court addressed Cooper Clinic's motion for summary judgment. In support of its motion for summary judgment, Cooper Clinic submitted the affidavit of Lisa Woodward, R.N., and the depositions of Janet Stephens, Betty Maddox, Brandy Sams, and Dr. Laura Lowther. These supporting documents can be briefly summarized; however, the depositions of Brandy Sams and Dr. Laura Lowther, who both work for Pathology Laboratory Services, were also submitted in support of the laboratory's response to Cooper Clinic's motion for summary judgment. Because they deal with the laboratory's procedures, they will be summarized only once and in the section of this opinion setting out the laboratory's response although both sides used them and relied upon them.

*1) Woodward affidavit*—Lisa Woodward, R.N., stated her background, qualifications, and professional associations. After reviewing the complaint, the Maddox and Joseph depositions, and the Cooper Clinic policies and endoscopic-procedure record for Sheila Myers, Woodward stated her opinion that Dr. Joseph and the two nurses assisting him in the August 23, 2004 gastric-biopsy procedure provided the

---

1. The only issue before us involves the grant of summary judgment to Cooper Clinic. On motion by Pathology Services Laboratory, we have previously dismissed as nonappealable the portion of the appeal challenging the transfer of venue to Pope County.

required standard of medical care and stated her belief that it was highly unlikely that the gastric-biopsy specimen taken from Ms. Myers became contaminated with a male mantle-cell-lymphoma specimen in the Cooper Clinic, P.A., endoscopic suite.

*2) Maddox deposition*—Betty Maddox explained that she was a registered nurse employed by Cooper Clinic as Director of the ambulatory-surgery center. She stated that she played no clinical role with regard to Ms. Myers's 2004 procedure, but that as director she is very familiar with the procedures employed in the endoscopic suite. She described those procedures in detail, explaining the steps that are involved in the type of biopsy procedure Ms. Myers had. She also described in detail the equipment that is used and the sterilization procedures that are followed. She stated that after the allegations arose about tissue contamination concerning Ms. Myers, she participated in the investigation to determine whether it could have occurred at Cooper Clinic. She described the steps they took in the investigation and stated that at its conclusion, she was confident no cross-contamination had occurred at Cooper Clinic.

*3) Stephens Deposition*—Janet Stephens explained that she is a registered nurse in endoscopy at the ambulatory-surgery center at Cooper Clinic. She acknowledged that she had no independent recollection of the procedure involving Ms. Myers, and, therefore, her information was based on procedures and records. She stated that she was the nurse in charge of sedation, vital signs, and record keeping during the procedure, and she described in detail the steps that are taken when specimens are retrieved from the body. She stated that the specimen-container lids are not unscrewed until just before the specimens are placed in the containers and that she was not aware of any situation in which the specimen-container lid would be unscrewed after the specimens were placed in the container. She said that she was also not aware of any situation where a container with a specimen in it would be put back on the supply shelf rather than being handed to the circulator nurse to label it and put it in the hallway for collection. She concluded that she could think of no way that the cross-contamination could have occurred at Cooper Clinic.

The Myerses offered the affidavit of Dr. James G. Caya, and the depositions of Dr. Joseph, Betty Maddox, and Janet Stephens, as well as the depositions of Brandy Sams, and Dr. Laura Lowther referenced above in support of their response to the clinic's motion for summary judgment.

*1) Caya Affidavit*—James Caya, M.D., described his background, qualifications, and professional associations. He explained that he is a medical doctor with specialty in the field of pathology and laboratory medicine and that he resides in Wisconsin. He stated that he had reviewed a set of medical records with regard to Ms. Myers, and that, generally, "these records pertain to Ms. Myers' endoscopy with biopsy of gastric tissue on August 23, 2004; the subsequent pathology work-up of the same; and Ms. Myers' subsequent care, treatment, and diagnosis." He said that based on the medical records available to him, it appeared that at some point following excision of the biopsy tissue, it was contaminated with tissue belonging to a different individual—a male. He said that, as a result, Myers's tissue was inaccurately diagnosed as mantle-cell lymphoma. Dr. Caya explained that he is familiar with the standards of care for handling, preparing, processing, and examining tissue samples submitted for pathological examination in Madison, Wisconsin, where he practices, and that the same standards exist in Fort Smith

and Russellville, Arkansas, based on his review of the medical records and scope of services provided by Cooper Clinic and Pathology Laboratory Services. He said that the "standard of care for the collection, handling, processing, preparation, and examination of a patient's biopsy material mandates that one patient's tissue not be combined or otherwise contaminated with tissue from a different patient." He also stated that the medical records alone do not explain the exact point in time and place when the contamination occurred and that it could have occurred either at the Cooper Clinic or at Pathology Services Laboratory. He stated that regardless of where it occurred, regardless of the exact mechanism of contamination, such a contamination violated the applicable standard of care for either facility.

*2) Joseph Deposition*—Dr. Jacob Joseph explained that he is employed at Cooper Clinic, where he is a physician in the Gastroenterology Department. He stated that he has no actual recollection of the procedure he performed on Ms. Myers on August 23, 2004, beyond his review of the records. He described the procedure and explained that his investigation had not revealed any source for the contamination at Cooper Clinic.

*3) Sams Deposition*—Brandy Sams stated that she was the Histology Supervisor at Pathology Services Lab and that in August 2004, she was in charge of quality control for the histology technicians. She explained in detail the procedures utilized at the lab. She acknowledged that she had no specific recollection of Ms. Myers's pathology examination, but she testified that the lab follows the same procedure and protocol with every case. She confirmed that she was aware that it had been determined that the block material from Ms. Myers's specimen contained fragments from two different individuals. She offered her opinion that she did not think

it could have conceivably happened in her lab because of all of the precautions they take and expressed her further opinion that the contamination happened at Cooper Clinic. She acknowledged, however, that she knew nothing about the procedures used at Cooper Clinic.

*4) Lowther Deposition*—Dr. Laura Lowther, a pathologist, explained that she had worked at Pathology Services Laboratory since 1998. She stated that she had reviewed designated reports and was aware that male tissue had been mixed with Ms. Myers's tissue but that she did not believe the contamination occurred at Pathology Services Lab. She described the investigation she had conducted after learning of the cross-contamination, acknowledging that in her lab there had been a GI biopsy the previous Friday that was processed and diagnosed as atypical-lymphoid aggregates but that that tissue was processed and all the slides were cut *prior* to having received Ms. Myers's biopsies in the lab, and, therefore, she did not believe it was a possible contaminant. She explained that other samples involving lymphomas were handled completely *after* Ms. Myers's tissue was processed. She explained that she looked at the overlapping time period for the same day Ms. Myers's tissue would have been processed, with respect to all of the medical facilities serviced by the lab, not just Cooper Clinic, and had found one that displayed atypical-lymphoid aggregates; specifically, a mantle-cell lymphoma was diagnosed the following week by another pathologist but that that patient was a female. She expressed her opinion that the contamination of Ms. Myers's tissue did not occur at Pathology Services Lab and that the only other likely place would be Cooper Clinic.

The remaining depositions submitted by the laboratory were previously summa-

rized with respect to Cooper Clinic's motion.

Following its review of the evidence, the trial court explained that Cooper Clinic had established that it followed proper procedures in retrieving and handling the biopsy specimen and that there was no point in time when contamination could have occurred at its facility. The court stated that the burden of proof then shifted to the Myerses to meet proof with proof. The court concluded that they had not met their burden because neither Dr. Caya's affidavit nor Dr. Lowther's deposition created a material question of fact concerning when or whether the contamination occurred at Cooper Clinic. The trial court reasoned that, while Dr. Caya had stated with medical certainty that contamination had occurred, he had also acknowledged that he could not say at what point in time or where the contamination occurred. Similarly, the trial court explained that, while Dr. Lowther had accused Cooper Clinic of being responsible for the contamination, she had also acknowledged that she had no evidence to support her conclusion. The trial court concluded that mere accusations without supporting proof failed to satisfy the required burden of meeting proof with proof under summary-judgment standards. The trial court specifically noted that its ruling did "not address issues arising from the doctrine of *res ipsa loquitur* forwarded by [the Myerses]."

Our standard of review is well settled in cases involving the grant of summary judgment:

> In reviewing summary judgment cases, this court need only decide if the trial court's grant of summary judgment was appropriate based on whether the evidence presented by the moving party left a material question of fact unanswered. *Parker v. Perry*, 355 Ark. 97, 131 S.W.3d 338 (2003). The moving party always bears the burden of sustaining a motion for summary judgment. *Id.* All proof must be viewed in the light most favorable to the resisting party, and any doubts must be resolved against the moving party. *Id.* The moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.*

> Once the moving party makes a prima facie showing that it is entitled to summary judgment, the opponent must meet proof with proof showing a material issue of fact. *Parker v. Perry, supra.* However, if a moving party fails to offer proof on a controverted issue, summary judgment is not appropriate, regardless of whether the nonmoving party presents the court with any countervailing evidence. *Id.*

*Fort Smith Sch. Dist. v. Beebe*, 2009 Ark. 333, at 4, 322 S.W.3d 1, 3–4.

For their first point of appeal, the Myerses contend that summary judgment is not proper against a party who has established a prima facie showing of negligence predicated on the doctrine of *res ipsa loquitur*. The argument rests upon a false premise, *i.e.*, that they established a prima facie showing of negligence based on the *res ipsa loquitur* doctrine. As explained by the trial court, once Cooper Clinic presented its proof that it had satisfied the appropriate standard of care in performing the endoscopic biopsy and maintaining the integrity of the specimen, the burden to show otherwise shifted to the Myerses and they did not satisfy the shifted burden of meeting proof with proof. Under these disclosed circumstances, the trial court found it unnecessary to delve

into the Myerses' issues regarding the application of *res ipsa loquitur*, and we agree.

■ *Res ipsa loquitur* is a rule of evidence. *Schmidt v. Gibbs*, 305 Ark. 383, 807 S.W.2d 928 (1991). It comes into play when four conditions are met: 1) the defendant owes a duty to the plaintiff to use due care; 2) the accident is caused by the thing or instrumentality under the control of the defendant; 3) the accident which caused the injury is one that, in the ordinary course of things, would not occur if those having control and management of the instrumentality used proper care; and 4) there is an absence of evidence to the contrary. *Id.* The doctrine may be applied in cases of medical malpractice on the part of any and all medical-care providers as defined by the Medical Malpractice Act *if* the essential elements for its application are present. *Id.*

The quandary over contamination of Ms. Myers's tissue is similar to that presented in *Schmidt v. Gibbs, supra*. In *Schmidt*, our supreme court explained:

> In the instant case, the appellant is not entitled to the application of the doctrine of res ipsa loquitur in respect to appellees Browning and Arkansas Anesthesia, P.A., for reasons similar to those discussed in *Brown* [*v. Dark*, 196 Ark. 724, 119 S.W.2d 529 (1938)]. Here, there is "evidence to the contrary" which indicates the use of "proper care" by Dr. Browning and Nurse Ray. The expert witness selected by the appellant has testified in clear and unequivocal terms that the care and treatment offered by Dr. Browning and Nurse Ray was not below the standard of care required. In addition, the appellees' expert witness, Dr. Robert G. Valentine, corroborates Dr. Jeffries' opinion that Dr. Browning and Nurse Ray had met the requisite standard of care.

> Appellant attempts to maintain the potential liability of Dr. Browning and Nurse Ray by submitting Dr. Jeffries' affidavits opining that the type of fire which occurred in this case could not happen absent negligence on behalf of someone on the surgical team of Dr. Gibbs, Dr. Browning, Nurse Anesthetist Ray, and the attending nurses. However, this evidence is insufficient to overcome Dr. Jeffries' |₁₁testimony that the actions of Dr. Browning and Nurse Ray were not below the standard of care required. This testimony constitutes "evidence to the contrary" thereby preventing the application of the doctrine of res ipsa loquitur. Since there is no direct evidence of negligence either, there are no material issues of fact in dispute. Accordingly, the decision of the trial court to grant summary judgment on behalf of appellees, Dr. Stanley Browning and Arkansas Anesthesia, P.A., is affirmed.

305 Ark. at 389, 807 S.W.2d at 932.

■ Here, as in *Schmidt*, at least one of the critical elements for application of the doctrine was missing—the absence of evidence to the contrary. In support of its motion for summary judgment, Cooper Clinic presented evidence that contradicted the Myerses' position that the accident was caused by the instrumentality under the control of Cooper Clinic and that the accident causing the injury was one that would not occur if those having control of the instrumentality used proper care. That is, the clinic presented evidence that while the specimen was under its control, proper care *had* been taken to prevent contamination.

■ Just as in *Schmidt, supra*, in addition to the *res ipsa loquitur* doctrine not being applicable, neither was there any direct evidence of negligence. The trial court explained that, while Dr. Caya had

stated with medical certainty that contamination had occurred, and that such contamination violated the applicable standard of care, he had also acknowledged that he could not say at what point in time or where the contamination occurred. He could not say whether it happened at Cooper Clinic or at the laboratory. His affidavit simply did not challenge in any fashion the evidence presented in support of the motion for summary judgment. The trial court also explained that, while Dr. Lowther had accused Cooper Clinic of being responsible for the contamination, she had acknowledged that she had no evidence to support her conclusion. The court concluded that "mere accusations without supporting proof" failed to satisfy the required burden of meeting proof with proof under summary-judgment standards. We agree. In short, the Myerses did not sufficiently rebut the evidence presented by Cooper Clinic to create a material question of fact that would defeat the motion for summary judgment.

For their second point of appeal, the Myerses contend that they should not be required to present expert opinion in opposition to the motion for summary judgment because the asserted negligence, *i.e.*, cross-contamination of the sample, lies within common knowledge and does not require expert testimony. *See* Ark.Code Ann. § 16–114–206 (Repl.2006). They further argue that, even if there is such a requirement under the circumstances of this case, they satisfied it with the affidavit of Dr. Caya.

We dispose of this issue by merely noting that the trial court did not rule on the issue of whether expert testimony was required in this situation. Rather, the trial court accepted Dr. Caya's affidavit as expressing an expert opinion—and still found that it did not sufficiently rebut the evidence submitted by Cooper Clinic.

Affirmed.

HOOFMAN, J., agrees.

GRUBER, J., concurs.

RITA W. GRUBER, Judge, concurring.

Based upon our standard of review as well as recent decisions of our supreme court, as set forth in the majority opinion, I have finally resolved in my mind that this case must be affirmed. Because this is a summary-judgment case, Cooper Clinic provided the affidavit of its expert Lisa Woodward, RN, to advance its position that there was an absence of genuine issue of material fact regarding the clinic's procedures. Unfortunately, the Myerses did not meet their shifting burden by providing the deposition testimony and affidavit of their expert, Dr. James Caya, and the deposition testimony of former defendant Dr. Laura Lowther. The trial court noted that nurse Woodward's affidavit revealed no "point in time" that the contamination might have occurred but provided "strong proof of the propriety of the Cooper Clinic policies and procedures." On the other hand, Dr. James Caya stated his medical certainty that contamination had occurred but was unable to pinpoint the specific time or place, while Dr. Lowther stated she had "no evidence" to support her accusation that the contamination happened at Cooper Clinic.

There is no question that Ms. Myers's sample tissue was contaminated with male tissue positive for lymphoma, and that one or more parties were responsible. Because we have affirmed summary judgment as to Cooper Clinic, the Myerses have no chance to fully develop before a jury important issues regarding the time and place that contamination occurred. They were essentially forced to try this on summary-judgment motions alone.