Cite as 2023 Ark. App. 562

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-22-94

|  |  |
|---|---|
| | Opinion Delivered December 6, 2023 |
| BENNIE BURKS, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF OLIVER LEE BURKS, DECEASED<br>APPELLANT | APPEAL FROM THE INDEPENDENCE COUNTY CIRCUIT COURT [NO. 32CV-17-48] |
| V. | HONORABLE HOLLY MEYER, JUDGE |
| HUNTER L. BROWN, M.D., AND ROBERT T. EMERY, M.D.<br>APPELLEES | REVERSED AND REMANDED |

**STEPHANIE POTTER BARRETT, Judge**

Appellant Bennie Burks, as special administrator of the Estate of Oliver Lee Burks, deceased ("the Estate"), appeals an order from the Independence County Circuit Court granting summary judgments in favor of Dr. Hunter L. Brown and Dr. Robert T. Emery. The Estate filed a medical-malpractice case arising out of a surgical laparoscopic left-nephrectomy procedure jointly performed on Oliver Burks by Dr. Brown, as chief surgeon, with Dr. Emery assisting on December 29, 2015. During the procedure, Oliver Burks suffered a near circumferential injury to his abdominal aorta, which resulted in his death. The circuit court granted Dr. Brown's and Dr. Emery's motions to reconsider their previously denied motions for summary judgment on October 19, 2021, dismissing the

remainder of the Estate's complaint and all amendments on the finding that the Estate had not come forward with proof from a qualified expert to establish to a reasonable degree of medical certainty or probability that some action or inaction of the doctors fell below the standard of care and proximately caused the injury that would not have otherwise occurred. The Estate appealed from this order, arguing that the circuit court erred in granting summary judgment in favor of Drs. Emery and Brown as the result of its erroneous application of res ipsa loquitur. We agree that summary judgment was not appropriate and material questions of fact are left unanswered; thus, we reverse and remand.

The purpose of the surgery was to remove Oliver Burks's left kidney, thus removing the early-found, nonlethal local cancer. Dr. Brown controlled the da Vinci surgical robot from the control station six feet away with his back turned to the patient. At the same time, Dr. Emery was stationed at the bedside manipulating a handheld stapler, the placement and firing of which was controlled jointly by both him and Dr. Brown. It is unknown the exact mechanism of the injury to Oliver Burks's aorta because there is scant detail in the medical record of the event. Dr. Brown's entire description of the unexpected catastrophic injury to Oliver Burks's aorta consists of one sentence: "A vascular stapler was utilized to secure the hilum and there was an injury to the aorta." Nowhere in the record does Dr. Brown describe how the injury occurred or what caused it. The only description of the scope of the injury in the medical records is authored by Dr. Jay Jeffrey, one of the surgeons brought in emergently to repair the aortic injury. In this record, Dr. Jeffrey describes the injury to Oliver Burks's aorta as "near circumferential," meaning that the large main artery where blood

2

flowed through Mr. Burks's body was nearly severed in two. At no time during the surgery to remove Mr. Burks's kidney was there any medical purpose to cut or injure his aorta. Oliver Burks lost five liters of blood, an amount equal to the entirety of a typical human's blood supply, and his organs began to die. Mr. Burks died twenty-five days later.

Summary judgment is to be granted by a circuit court only when there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Stoltze v. Ark. Valley Elec. Coop. Corp.*, 354 Ark. 601, 127 S.W.3d 466 (2003). The moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Gafford v. Cox*, 84 Ark. App. 57, 129 S.W.3d 296 (2003). The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000). All proof submitted must be viewed in the light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *Id.* Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appeal, the reviewing court need only decide if the grant of summary judgment was appropriate by determining whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Liberty Mut. Ins. Co. v. Whitaker*, 83 Ark. App. 412, 128 S.W.3d 473 (2003). Our review focuses not only on the pleadings, but also

on the affidavits and other documents filed by the parties. *Saine v. Comcast Cablevision of Ark., Inc.*, 354 Ark. 492, 126 S.W.3d 339 (2003).

The Arkansas Supreme Court has held that the proof required to survive a motion for summary judgment in a medical-malpractice case must be in the form of expert testimony. *Oglesby v. Baptist Med. Sys.*, 319 Ark. 280, 891 S.W.2d 48 (1995). The nonmoving party need not "establish its case by a preponderance of the evidence or by any other standard of proof; . . . it is only required to establish that there is a genuine issue for trial." *Baggett v. Bradley Cnty. Fanners Coop.*, 302 Ark. 401, 403, 789 S.W.2d 733, 735 (1990). The circuit court found that experts for both the Estate and Drs. Brown and Emery opined that mechanical failure of the medical staple device could cause the injuries to Mr. Burks absent the negligence of the defendant doctors and therefore, the application of the doctrine of res ipsa loquitur was not appropriate under the facts presented in this case. On appeal, the Estate argues this was incorrect. We agree.

The doctrine of res ipsa loquitur was developed to assist in the proof of negligence where the cause is connected with an instrumentality in the exclusive control of a defendant. *Schubert v. Target Stores, Inc.*, 2010 Ark. 466, at 6, 369 S.W.3d 717, 720. It applies where the evidence of the true cause is available to the defendant but not to the plaintiff. *Id.*, 369 S.W.3d at 720. The doctrine, when applicable, allows the jury to infer negligence from the plaintiff's evidence of circumstances surrounding the occurrence. *Id.*, 369 S.W.3d at 720. The theory of res ipsa loquitur is a rule of evidence that comes into play when (1) the

defendant owes a duty to the plaintiff to use due care;[1] (2) the accident is caused by the thing or instrumentality under the control of the defendant; (3) the accident that caused the injury is one that, in the ordinary course of things would not occur if those having control and management of the instrumentality used proper care; and (4) there is an absence of evidence to the contrary. *Dollins v. Hartford Accident & Indem. Co.*, 252 Ark. 13, 477 S.W.2d 179 (1972); *Martin v. Aetna Cas. & Surety Co.*, 239 Ark. 95, 387 S.W.2d 334 (1965); *Sw. Tel. & Tel. Co. v. Bruce*, 89 Ark. 581, 117 S.W. 564 (1909). Arkansas law allows a res ipsa loquitur claim to stand against multiple defendants when it is unclear which of the defendants' negligence was the cause of the injury. *See Stalter v. Coca-Cola Bottling Co. of Ark.*, 282 Ark. 443, 669 S.W.2d 460 (1984).

> In the words of Justice Holmes, res ipsa loquitur is
>
> merely a short way of saying that, so far as the court can see, the jury, from their experience as men of the world, may be warranted in thinking that an accident of this particular kind commonly does not happen except in consequence of negligence, and that therefore there is a presumption of fact, in the absence of explanation or other evidence which the jury believe, that it happened in consequence of negligence in this case.

*Graham v. Badger*, 41 N.E. 61 (Mass. 1895). This is the kind of inference that jurors commonly are allowed to make from circumstantial evidence, the only difference being that when res ipsa loquitur applies, the circumstantial evidence from which the inference is drawn is the fact of the injury itself, plus the few obvious facts that surround the injury but do not

---

[1]The dissent contends that the third element of res ipsa loquitur was not met; however, neither party contends that the third element was not met, nor did the circuit court make this finding.

clearly explain how it happened. *Marx v. Huron Little Rock*, 88 Ark. App. 284, 292, 198 S.W.3d 127, 133 (2004) (citing *Coca-Cola Bottling Co. v. Hicks*, 215 Ark. 803, 807, 223 S.W.2d 762, 764–65 (1949)); *see also Sherwood Forest Mobile Home Park v. Champion Home Builders Co.*, 89 Ark. App. 1, 3, 199 S.W.3d 707, 710 (2004).

In its order granting summary judgment, the circuit court found, "Experts for both Plaintiff and Defendants opine that mechanical failure of the medical staple device could cause the injuries to Mr. Burks absent the negligence of the defendant doctors. The Court finds that this constitutes evidence to the contrary. Upon reconsideration, the Court finds that application of the doctrine of *res ipsa loquitur* is not appropriate under the facts presented in this case." After a review of the pleadings, affidavits, and other documents filed by the parties, we find that both experts did not opine that mechanical failure of the medical staple device could cause injuries to Mr. Burks absent the negligence of the defendant doctors. Therefore, there is evidence to the contrary, and the fourth prong of res ipsa loquitur has been met. We hold that the grant of summary judgment was in error because there are questions of material fact left unanswered.

Doctors Brown and Emery presented as their expert witness Dr. Christian Pavlovich. In his deposition, Dr. Pavlovich was asked, "So there would never be a time when you're using a stapler that you would injure an aorta in the ordinary course, if you're being careful?" To which Dr. Pavlovich responded, "No." When asked if the stapler could have malfunctioned and caused the injury absent negligence on behalf of the doctors, he opined

that it was a possibility.  He did not, however, opine that he thought the injury was caused by the stapler malfunctioning.

The Estate presented, as an expert, Dr. Harrison Abrahams's deposition testimony, which is unequivocal and directly contradictory to the court's findings.  At no point did Dr. Abrahams agree with Dr. Pavlovich that the stapler could have independently caused the injury to Oliver Burks.  Dr. Abrahams testified that there could be three reasons for this type of injury to occur: an anatomical issue with the patient (such as an aneurysm), a mechanical issue (such as a malfunction of the stapler), or human error.  All parties agreed that Mr. Burks did not suffer from any anatomical issue that would cause such an injury, so that possibility was ruled out.  He then considered a mechanical malfunction as a possibility, but after he considered and analyzed that possibility, he discarded it, explaining that there was absolutely no evidence of the stapler's malfunction. He focused on the testimony of Drs. Brown and Emery in reaching that conclusion. Dr. Brown testified that the device, when it was closed, lurched forward, and that was when the bleeding started, and then the stapler was fired.  Dr. Brown stated, "From my view through the robotic console, the stapling device moved forward when the jaws were closed."  Dr. Emery testified during his deposition that the stapler, which he held in his hand and had manually placed on the hilum connecting the kidney, suddenly "lurched forward."  It would appear from this description that Dr. Emery caused the injury with the stapler.  It was immediately following this "lurch forward" that Drs. Brown and Emery claimed the bleeding began.  Dr. Abrahams then explained in his deposition testimony that, on the basis of the available records and testimony, there was

7

no indication that the stapler malfunctioned. If the bleeding started after the stapler "lurched forward" and before it was fired, as testified to by Dr. Emery, then it could not have been a malfunction of the stapler. Dr. Abrahams testified that he believed it was the mechanical force of the instrument lunging forward that caused the injury. In his affidavit, Dr. Abrahams stated:

> Had Dr. Brown and Dr. Emery appropriately avoided injuring Mr. Burks aorta, he would not have suffered the severe blood loss and death. I simply cannot believe that any element of intent exists. What then remains is a clear failure to properly protect the abdominal aorta from injury and ensure its protection. This represents a deviation from the minimum standard of reasonable medical care. I hold these opinions in terms of reasonable medical certainty.

There is clear, unequivocal testimony by Dr. Abrahams that there was human error by Drs. Emery and Dr. Brown, who had exclusive control over the instrument and owed a duty of care to Mr. Burks, and that their actions fell below the standard of care. Thus, there is a dispute between the Estate's expert and defendants' expert whether the injury was caused by a stapler malfunction, or negligence on the part of Drs. Brown and Emery. Dr. Emery and Dr. Brown rely on the mere possibility that a malfunction by the stapler caused the catastrophic injury to Mr. Burks's aorta, but they have not produced any proof of such a malfunction. According to Dr. Brown, there has been no effort to determine whether the stapler did actually malfunction nor was an investigation conducted to determine if the stapler malfunctioned. Drs. Brown and Emery did not report a malfunction of the stapler to the manufacturer, note a malfunction in the medical records, or preserve the stapler for

8

inspection. In fact, the doctors continued to use the same model stapler in surgeries as was used in this case.

In its order, the circuit court focused on one possible theory, taken out of context, of what could have happened when Dr. Abrahams explained three possibilities of how the injury could have occurred. Dr. Abrahams had merely theorized that it was a possibility that the stapler malfunction—a possibility that he considered, analyzed, and discarded since there was absolutely no evidence of malfunction of the stapler. Dr. Abrahams did not testify he agreed with Drs. Brown and Emery or their expert that the stapler could have independently caused the injury to Mr. Burks by malfunctioning. Dr. Abrahams testified that the stapler was handheld and could not move on its own. It was a passive instrument only able to be moved by the operator of the device.

It was Dr. Abrahams's unequivocal opinion that, within a reasonable degree of medical certainty, human error caused the lurching or movement forward that Dr. Brown and Dr. Emery claimed to have seen prior to injury. What remained after showing that the stapler did not malfunction was Dr. Abrahams's two likely causes of the movement: (1) Dr. Emery, for some reason, moved the stapler forward since it could not move itself; or (2) the da Vinci robot, controlled by Dr. Brown, accidentally hit Dr. Emery's hand, causing the stapler to move forward. Both possibilities hinge on the negligence of the surgeons, Dr. Brown and Dr. Emery, who accidentally pushed the tissue forward with enough pressure to cause a major injury to Mr. Burks's aorta.

We do not find that Drs. Brown and Emery established a prima facie case showing entitlement to summary judgment. Even if their allegations could somehow be considered as establishing a prima facie case of entitlement to summary judgment, the Estate refuted that entitlement with the unequivocal testimony of its expert that the only manner in which the injury could have occurred to Mr. Burks's aorta was by the doctors' actions that fell below the standard of care. The dissent has confused the burden of proof required to survive a motion for summary judgment with the burden of proof required at trial for the entitlement of a jury instruction on res ipsa loquitur to be submitted to a jury and cites *Southwestern Telephone Co. v. Bruce*, 89 Ark. 581, 117 S.W. 564 (1909), for the proposition that first a plaintiff must present proof to demonstrate that the application of the doctrine is warranted before the burden shifts to the defendant to prove the injury was not caused through a lack of care on its part. However, as stated previously, the proof required to survive a motion for summary judgment in a medical-malpractice case must be in the form of expert testimony, and the nonmoving party need not establish its case by a preponderance of the evidence or by any other standard of proof; it is only required to establish that there is a genuine issue of material fact for trial. *See Oglesby*, *supra*; *Baggett*, *supra*. The conflict in expert testimony is an issue of material fact for the trier of fact to determine. This court cannot weigh the evidence, nor can it determine the credibility of the witnesses, which is precisely what the dissent has done by discrediting parts of Dr. Abrahams's testimony and judging his testimony as inconsistent. The nonmoving party must only show the existence of a material issue of fact in controversy, and he has done so in this case.

Reversed and remanded.

HARRISON, C.J., and VIRDEN and HIXSON, JJ., agree.

GLADWIN and GRUBER, JJ., dissent.

**ROBERT J. GLADWIN, Judge, dissenting**. Today, the majority reverses the circuit court's order granting summary judgment to the appellees and allows the case to move forward against two medical professionals under an improper application of the doctrine of res ipsa loquitur. Because the majority incorrectly places the burden of proof on the appellees to establish causation rather than requiring the appellant to set forth the required expert testimony to survive summary judgment in a medical-malpractice case, I dissent.

First, the majority writes that the order on appeal dismissed the case because the appellant failed "to come forward with proof from a qualified expert to establish to a reasonable degree of medical certainty that some action or inaction of the appellees fell below the standard of care and proximately caused the injury." While this accurately reflects a finding of the court—as it relates to appellant's cause of action for direct negligence—it is not the finding on review. After the first summary-judgment hearing, the appellant abandoned her claims of specific negligence against the appellees and, as acknowledged on appeal, "informed the court she would only be proceeding on a *res ipsa loquitur* theory." Upon reconsideration of the appellees' previously denied motions for summary judgment, the circuit court held that application of the doctrine of res ipsa loquitur is not appropriate under the facts of the case because the fourth element of the doctrine was not satisfied. I

11

submit that the court correctly applied the law to the facts herein, and the order granting summary judgment should be affirmed.

The majority faults the appellees for not describing how the injury to Mr. Burks's aorta occurred rather than focusing on the real issue—a question of law—which is whether the appellant is entitled to application of the doctrine of res ipsa loquitur. Arkansas law dictates she is not. It is well established that a plaintiff must first present proof to demonstrate that the application of the doctrine is warranted. Then, and only then, does the burden shift to the defendant to prove that the injury was not caused through a lack of care on its part. *See Sw. Tel. & Tel. Co. v. Bruce*, 89 Ark. 581, 117 S.W. 564 (1909). For the doctrine to be applicable, however, it must first be established that (1) the defendant owed a duty to the plaintiff to use due care; (2) the accident must be caused by the thing or instrumentality under the control of the defendant; (3) the accident that caused the injury must be one that, in the ordinary course of things, would not occur if those having control and management of the instrumentality used proper care; and (4) there must be an absence of evidence to the contrary. *Sherwood Forest Mobile Home Park v. Champion Home Builders Co.*, 89 Ark. App. 1, 3, 199 S.W.3d 707, 710 (2004).

Our appellate courts have held that the doctrine may be applied in cases of medical malpractice on the part of medical-care providers only *if the essential elements for its application are present. See Schmidt v. Gibbs*, 305 Ark. 383, 807 S.W.2d 928 (1991); *Myers v. Cooper Clinic, P.A.*, 2011 Ark. App. 435, 384 S.W.3d 622. Here, the appellees established a prima facie case for summary judgment by showing that the elements of res ipsa loquitur were not met;

12

thus, they were entitled to judgment as a matter of law. They did so through testimony of their expert, Dr. Christian Pavlovich, who testified that the conduct of the medical-care providers did not deviate from the standard of care; as well as the testimony from appellant's expert—Dr. Abrahams—who opined that the type of injury sustained by Mr. Burks (i.e., injury to the aorta) could occur in the absence of negligence. Accordingly, the appellant was then required to come forward with proof, in the form of expert testimony, that created a material issue of fact regarding the "essential elements" of res ipsa loquitur.

The majority opinion is silent regarding the third element that must be met for res ipsa loquitur to apply, presumably because the circuit court based its finding on the fourth essential element—that there be "an absence of evidence to the contrary"; however, our review is not limited to the reasoning set forth by the circuit court. On appeal, the appellees argue the appellant failed to establish that the injury to Mr. Burks's aorta is one that would not have occurred in the absence of the appellees' negligence. I agree. In reversing this case, the majority relies exclusively on the testimony of appellant's only expert witness, Dr. Abrahams; yet his testimony precludes application of the doctrine. The majority claims that the circuit court focused on one of Dr. Abrahams's theories and that it was "taken out of context." In reality, the majority has inappropriately taken it upon itself to weigh the evidence rather than limit its review to whether the appellant sustained her burden of proving a genuine issue for trial.

Dr. Abrahams testified that aortic injuries and surgical complications can and do happen in the ordinary course of surgery in the absence of negligence. Specifically,

13

Abrahams testified that aortic injury is one of the risks he advises his patients could occur during surgery. Even more detrimental is Abrahams's testimony that in the course of six years, "there were 32,000 malfunction of staplers reported to the FDA," and a "stapler malfunction has happened at our hospital." Abrahams himself testified to having "had 4 or 5 potential failures cited by the FDA." Given this testimony, it is clear appellant cannot show that injury to Mr. Burks's aorta is such that results only when a physician fails to comply with the standard of care. Accordingly, the third element is not established, and the doctrine is not applicable to our facts.

The majority also errs in its analysis of the fourth essential element of res ipsa loquitur. For appellant to defeat summary judgment, there must be an absence of evidence to the contrary that Mr. Burks's injury would not have occurred if the appellees had used proper care in the control and management of the instrumentality. Here, the majority states that even if appellees' allegations establish a prima facie case of entitlement to summary judgment, the appellant refuted that entitlement with the *unequivocal* testimony of her expert that the only manner in which the injury could have occurred was by the appellees' action, which fell below the standard of care. It is difficult to understand how the majority could describe Dr. Abrahams's testimony with an adjective synonymous with "lacking in doubt; having only one possible meaning; certain; or direct." Rather, Dr. Abrahams's testimony—in its entirety—is riddled with inconsistencies, doubt, and a slew of possible theories of the cause of Mr. Burks's injury.

The majority focuses on only one of the theories proposed by Dr. Abrahams: a possible mechanical failure of the surgical stapler. While it is true that there is no tangible evidence that the stapler malfunctioned—other than Dr. Brown's testimony that he believed that to be the case—there is also no evidence that the instrument did not malfunction. Also problematic is the majority's contention that Dr. Abrahams provided unequivocal testimony that human error caused the stapler to lurch forward and pushed the tissue forward with enough pressure to cause a major injury to Mr. Burks's aorta. Conversely, the majority qualifies the medical record as so "scant with detail" that "the exact mechanism of the injury to Oliver Burks's aorta is unknown." The inconsistent statements of one's own expert should not be used to create an issue of material fact.

Furthermore, a stapler malfunction was not the only possible theory described by Dr. Abrahams. After Dr. Brown testified that he saw the stapler "lurch forward," Abrahams offered some additional theories as to what could have caused this movement: (1) the robotic arm could have hit Dr. Emery; (2) the robotic machine could have hit the stapler; or (3) an instrument attached to the robot could have hit the stapler. What Abrahams does not do is explain how all of these various theories can be attributed to the appellees other than stating that they were the doctors performing the surgery, and they had a duty not to injure Mr. Burks's aorta.

Finally, a recurrent theme in the majority's opinion is the lack of evidence presented by the appellees that something other than their own negligence caused the injury. Accordingly, the majority deviates from precedent by shifting the burden to the medical

providers to prove that the injury was the result of something other than their own negligence before appellant has proved entitlement to the doctrine. Case law is clear that appellees were not required to offer an explanation of the event unless the four essential elements of res ipsa loquitur were established. As detailed above, they were not; thus, the doctrine is not applicable here, the majority's analysis is wrong, and the circuit court's order dismissing the case should have been affirmed.

In conclusion, while I acknowledge that this is an emotional case and sympathize with the appellant, I cannot agree to skirt around the law in order to justify a result. Because this case should be affirmed, I dissent.

GRUBER, J., joins.

*Collins, Collins & Ray, P.A.*, by: *Matthew G. French* and *Brian W. Ray*, for appellant.

*Reece Moore McNeill Pendergraft*, by: *Paul D. McNeill*, for separate appellee Hunter L. Brown, M.D.

*Friday, Eldredge & Clark, LLP*, by: *Tyler D. Bone* and *William M. Griffin III*, for separate appellee Robert T. Emery, M.D.

16